## Armstrong v. Commonwealth.

(Decided January 18, 1921.)

### Appeal from Fayette Circuit Court.

1. Robbery—Nature and Elements in General.—Robbery is the felonious taking by a person of personal property from the owner or rightful custodian, by force or putting him in fear. But to constitute the crime it is not indispensably necessary that the force or putting in fear employed by the taker of the property shall precede the taking; if both, or either, precede or accompany the taking of the property, it will be sufficient.

2. Robbery—Nature and Elements in General.—The distinguishing characteristic of robbery is the employment of force or intimida-

.tion in taking from the person or in the presence of the owner or lawful custodian personal property; while larceny is a taking of such property by stealth, and may or may not be from the person or presence of the one in possession. As the evidence in the instant case showed beyond a reasonable doubt the taking by the appellant, both by force and intimidation, of a valuable diamond ring from the possession of the owner, he was properly convicted of robbery as charged in the indictment; therefore, the refusal by the trial court of an instruction authorizing the jury to determine whether he was guilty of grand larceny, was not error.

3.  Robbery—Possession of Burglar's Tools—Evidence.—The admission on the appellant's trial of evidence that a search of his person by a policeman, following his flight and capture near the place of the robbery by that officer, disclosed his possession of a pair of brass knucks and some small saws, such as are used by burglars, was not error. Such evidence, in connection with the further evidence of the policeman as to appellant's possession at the same time of the diamond ring of which the owner had just been robbed and a pistol, such as was used in the commission of the robbery, was competent as tending to indentify appellant as the perpetrator of the crime, also a motive for its commission and his preparedness for resorting to deeds of violence in committing robbery or kindred crimes.

4.  Criminal Law—Failure of Defendant to Testify in His Own Behalf—Instructions.—An instruction telling the jury that the failure of the defendant in a criminal prosecution to testify in his own behalf should not be commented on, or considered by them as creating any presumption of his guilt of the crime charged, should not in every case necessarily be held to constitute reversible error. Whether it should be so regarded, would have to be determined by the facts of the particular case; but where, as in this case, the evidence so unerringly establishes the defendant's guilt as to convince the appellate court that the verdict of guilty returned by the jury, would have resulted, had the instruction in question not been given, the giving thereof by the trial court will not be held reversible error.

J. J. McBRAYER and FRANK L. McCARTHY for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McCREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, James Armstrong, was tried and convicted in the Fayette circuit court under an indictment charging him with the crime of robbery, the punishment inflicted by the verdict of the jury and judgment of the

court being imprisonment of ten years in the penitentiary.

This court is asked to reverse the judgment appealed from on the following grounds assigned as error: (1) The admission by the trial court of incompetent evidence. (2) Refusal to peremptorily instruct the jury to return a verdict of not guilty. (3) Failure to properly instruct the jury. (4) Misconduct of Commonwealth's attorney in argument. In order that these several contentions may be properly understood, it will be necessary to state the material facts presented by the evidence showing the commission of the crime charged, which are undisputed. They are that on May 5, 1920, the appellant entered the jewelry store of F. J. Heintz in the city of Lexington and requested the latter to show him a diamond ring, saying he wished to purchase it to match one owned by his wife who was then in Cincinnati. Heintz was alone in the store, his clerk being at the time up stairs. Heintz at once took from a box in the show case and placed on the counter for appellant's inspection a ring containing a diamond cluster wrapped in tissue paper, which he recommended. He also placed on the counter similarly wrapped a ring with a single diamond, which, when opened, appellant seemed to prefer. While this diamond ring was lying on the open paper appellant commanded Heintz to throw up his hands and pointed a pistol to his face. Instead of throwing up his hands Heintz called loudly to his clerk and dodged behind the counter, then arose intending to grab the diamond ring, but this he was prevented from doing by a shot fired at him by appellant with the pistol, followed by two others, one of the three striking and passing through his arm. Appellant then ran, carrying the diamond ring with him. He was followed to the door and down the street by Heintz, whose shouts caused a policeman to intercept and arrest him. Upon being searched by the policeman appellant was found in possession of the diamond ring of Heintz and with the ring there was taken from his person a pistol, pair of brass knucks and some small saws, such as are used by burglars.

The alleged incompetent evidence complained of was that respecting the finding of the brass knucks and saws on his person by the policeman. This evidence, in connection with appellant's possession of the ring of which

Heintz had just been robbed and the pistol by means of which the roberry was effected, was clearly competent, as it tended to identify him as the perpetrator of the crime, also to prove a motive for its commission by him and his preparedness for resorting to deeds of violence in accomplishing it.

The appellant's complaint of the trial court's refusal to direct a verdict of acquittal is equally without merit. It seems to be based on the claim of a variance between the allegations of the indictment and the evidence; it being argued by his counsel that whatever force was used by appellant upon or toward Heintz was employed after he obtained possession of the ring, and that to constitute robbery the force must have been used or Heintz put in fear previously to his being deprived of the ring. This contention is not supported by the evidence, nor does it correctly state the law, for it is not indispensably necessary that the force employed or the putting of the person robbed in fear should precede the taking of the property. It will be sufficient if both or either accompany the taking of the property, and, that was the case here. Heintz and appellant were the only persons present when the ring was taken by the latter and the testimony of Heintz, which was uncontradicted, clearly shows that the diamond ring was taken by appellant when or immediately after he pointed his pistol at him and ordered him to throw up his hands, or while he was shooting at him; and in any event there can be no doubt that the taking of the property constituted robbery, as it was effected both by force and putting the owner in fear. The distinguishing characteristic of robbery is the employment of force or intimidation in taking from the person or possession of the owner or custodian personal property, while larceny is, ordinarily, a taking of such property by stealth and may, or may not, be from the person or presence of the one in possession. Any force sufficient to take one's property against the will is robbery. Graves v. Comlth, 186 Ky. 479; Adams v. Comlth, 153 Ky. 88; Stockton v. Comlth, 125 Ky. 268; Brown v. Comlth, 135 Ky. 635; Blanton v. Comlth, 139 Ky. 411; Jones v. Comlth, 112 Ky. 689; Breckenridge v. Comlth, 97 Ky. 271; Davis v. Comlth, 21 R. 1295.

In Graves v. Commonwealth, *supra,* the defendant by suddenly assaulting and overpowering the owner took from his person his gold watch and chain and escaped

with them by flight. In Brown v. Commonwealth, *supra,* a pocket book containing $6.00, was suddenly and unexpectedly to the owner snatched from his hand by the defendant immediately followed by the swift flight of the latter. In Jones v. Commonwealth, *supra;* the defendant snatched from the hand of the owner a pocket book so quickly that the latter did not have time to actively resist. In Davis v. Commonwealth, *supra,* money was suddenly snatched by the defendant from the hand of the owner. It will thus be seen that in none of these cases did the force or putting in fear precede the taking of the property, but in each instance accompanied it; the force and taking of the property being one and the same act and the force consisting of the violence employed in taking the property. It will further be found that in each of the cases cited it was held that the perpetrator of the crime was not guilty of grand larceny, but of robbery as charged in each indictment.

It follows from the foregoing statement of the law, as well as what has been said of the evidence, that the failure of the trial court to direct a verdict of acquittal, was not error. Appellant's third contention, making complaint of the trial court's refusal to give an instruction under which the jury might have determined whether he was guilty of grand larceny, instead of robbery, is without merit. According to the evidence, there was no such absence of force as would have authorized a verdict finding him guilty of larceny, a lower degree of the crime charged in the indictment. On the contrary the evidence conclusively proved the force employed by appellant in taking the diamond ring and the felonious intent with which he took it, thereby establishing his guilt of the crime of robbery, of which he was rightly convicted. The only defense interposed by him on the trial was that of insanity, the evidence of which, though furnished, in part, by experts, was far from satisfactory. At any rate it was so regarded by the jury and their verdict, holding the evidence insufficient to prove such insanity, will not, on appeal, be disturbed, as the question was submitted to them by a proper instruction from the court, and the record affords us no ground for declaring it unsupported by the evidence.

Yet another complaint urged by appellant as a part of his third contention is that he was greatly prejudiced

by the action of the trial court in giving the jury the following instruction:

"The failure of the defendant to testify in his own behalf raises no presumption of guilt, and the jury is not to infer guilt from that fact."

This instruction follows in large part the language of the Criminal Code, section 223, subsection 1, which as a whole provides:

"That in all criminal and penal prosecutions now pending or hereafter instituted in any of the courts of this Commonwealth the defendant on trial, on his own request, shall be allowed to testify in his own behalf, but his failure to do so shall not be commented upon, or be allowed to create any presumption against him or her."

In Tines v. Commonwealth, 25 R. 1233, an instruction similar to the one here in question was condemned and the giving of same by the trial court held to be error. But this ruling was eminently proper because of a greater error previously committed by the trial court in permitting the reading to the jury by the Commonwealth of an affidavit the defendant, before the trial, had improperly been procured to make, and which purported to explain, in a manner inconsistent with the innocence of the affiant, his possession of property he was indicted for breaking into a warehouse and stealing. As the defendant had not testified in his own behalf on the trial, the instruction by telling the jury that no presumption of guilt could arise from his failure to orally testify, gave emphasis to the fact that his affidavit, which improperly had been read to them, and was still before them, furnished an all powerful reason for his failing to testify and, being unexplained or denied by him, it, in connection with other evidence in the case, was sufficient to establish his guilt. Under the circumstances nothing could have been more hurtful to the rights of the defendant than such an instruction. As other and more glaring errors stated in the opinion compelled the reversal of the judgment in the case, *supra,* it cannot with certainty be told therefrom, whether the reversal would have been adjudged if the giving of the instruction in question had been the only error committed by the trial court.

It is certainly the safer practice for a trial court to refrain from giving in any criminal or penal prosecu-

tion, in which the accused fails to testify, an instruction like that complained of in the instant case. But we are not prepared to say that in any and every case the giving of such an instruction would necessarily constitute reversible error. Whether it should be so regarded would have to be determined by the facts of the particular case. In several cases we have held that remarks of counsel in argument commenting or reflecting upon the failure of the defendant to testify, while reprehensible, was not prejudicial error under the peculiar facts of those cases, when attended or immediately followed by a proper reprimand or admonition from the court to counsel as to the impropriety of such argument or statement and telling the jury not to consider what had been said by counsel. McDonald v. Commonwealth, 177 Ky. 224; Hinton v. Commonwealth, 134 Ky. 511.

In view of the evidence of appellant's guilt furnished by the record before us, we are unwilling to declare the giving of the instruction in question so prejudicial to his substantial rights as to compel the reversal of the judgment, for, as a whole, it points so unerringly to the guilt of the defendant, as to leave him no loophole of escape and forces upon us the conviction that the same verdict would have been returned by the jury had the court not given the instruction complained of.

The alleged misconduct of the Commonwealth's attorney complained of in the fourth and final ground urged by appellant for a reversal, occurred while he was making the closing argument to the jury, and consisted of his pointing his finger at appellant and saying to the jury: "If you (meaning appellant) are an insane man, I never saw one." There was no impropriety in counsel's thus calling the attention of the jury to the appellant and expressing his disbelief of the latter's insanity; nor to argue that such insanity was not indicated by his appearance or bearing. It is absurd to say counsel's conduct or statement could have had any reference to the appellant's failure to testify in his own behalf. The issue as to the appellant's alleged insanity was one that he brought into the case and upon which proof was heard, and both the conduct and statement of the Commonwealth's attorney complained of bore upon that issue and were legitimately employed together with the evidence given by witnesses to enlighten the jury thereon.

As the appellant had a fair trial, the evidence authorized the verdict returned by the jury and the punishment thereby imposed was both reasonable and just, the judgment of conviction must be and is affirmed.