## Morris v. Commonwealth.

(Decided September 26, 1930.)

G. B. STAMPER, LEEBERN ALLEN and A. S. JOHNSON for appellant.

J. W. CAMMACK, Attorney General, and GEORGE HUNT MITCHELL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The appellant was convicted of the crime of voluntary manslaughter and sentenced to serve twelve years in the penitentiary. To reverse that judgment, he insists that he was entitled to a peremptory instruction; that the verdict of the jury was flagrantly against the evidence; that the court erred in the admission of certain testimony; and, lastly, that the court erred in overruling his motion for a continuance. The last two grounds may be quickly disposed of.

The failure of the court to grant the appellant a continuance was not made one of the grounds of his motion for a new trial, and hence cannot be considered on appeal.

Sutton Construction Co. v. Lemaster's Adm'r, 223 Ky. 296, 3 S. W. (2d) 613.

So far as the admission of the alleged incompetent evidence is concerned, we find that in each instance, save one, of which appellant has made complaint, the court sustained his objection and declined to admit the evidence. The one instance where the court did not sustain appellant's objection was the admission of the dying declaration of the person whom appellant killed. Appellant asserts that this declaration was incompetent, but gives no reason and offers no explanation for his position in this regard. We have been unable from a reading of the record to discover why he should claim that this dying declaration was incompetent, as the conditions which the law surrounds the admission of such declarations were all complied with in this instance. There is no merit in this ground for reversal.

We are then left to the consideration of the first two grounds, and they may be discussed together. Their consideration requires a short epitome of the evidence.

The appellant, Berry Turner, and his brother, O. O. Turner, for the killing of whom appellant is being prosecuted in this proceeding, had in the early afternoon of Christmas day, 1929, attended a Christmas tree celebration. It was a cold day and the snow lay upon the ground. The evidence leaves scarce doubt but that the parties were drinking on this occasion. At all events towards evening they went to the home of the appellant, perhaps for another drink. It being supper time, he invited the Turners to partake of the evening meal. This they did. After supper some one suggested that they make a ginger stew, and thereupon the appellant directed his wife to put some water, ginger, and sugar in the teakettle and to place it upon the grate to boil. This she did. After the water had come to a boil the appellant poured about a pint or a pint and a half of moonshine whiskey into the teakettle, and, after stirring its contents, he took a taste of the stew, when, to his great chagrin, he discovered that his wife had put so much water in the teakettle that the whiskey he had put into it was weakened to such an extent as to "ruin his stew." He began upbraiding his wife for her carelessness, whereupon O. O. Turner spoke up in behalf of the lady. Up to this point all sides agree as to what had taken place. The proof for the commonwealth shows that Turner's defense

of Mrs. Morris further enraged the appellant who seized a high-powered rifle that was lying nearby upon his bed. Turner grappled with him and succeeded in wresting the rifle from him, and then Morris ran out of the house. According to Morris' version of what took place when O. O. Turner intervened in behalf of Mrs. Morris, Berry Turner drew a pistol with which he was armed, that when this pistol was drawn appellant rose from the chair in which he was sitting, and, as he did so, O. O. Turner grabbed the rifle that was lying on the bed. Berry Turner fired his pistol a couple of times, and O. O. Turner flourished the rifle in a threatening manner, whereupon Morris hastily made his exit unharmed from the house. After Morris left the house there is again no dispute as to what took place up to the point just short of the killing of Turner. It seems that Morris first made his way to the home of Ervine Morris, a kinsman. He demanded that those in the house give him a gun saying that he had been run out of his house and needed a weapon wherewith to protect himself. He was told there was no gun in the house. He then left and went over to the home of Robert Thompson who lived about 400 yards away from the place where Ervine Morris lived. On arriving at the home of Robert Thompson and gaining entrance into the place, appellant made the same demand upon Thompson as he had upon Ervine Morris. Thompson declined to let him have a gun. There was a shotgun upon the wall near a bed in which Mrs. Thompson was sleeping. The appellant endeavored to seize this gun, and he and Thompson had quite a scuffle. During the scuffle, appellant saw a pistol lying upon a table in the room. He turned loose of the shotgun for the possession of which he was scuffling with Thompson, grabbed the pistol, ran out of the house, and made his way back to the home of Ervine Morris. In the meantime the Turner brothers left the home of John Morris and started out on their way to their own home. The road led across a creek and passed the house of Ervine Morris. In crossing the creek, O. O. Turner, who was wearing rubber boots, shipped about a quart of water into one of his boots. By the time he reached the house of Ervine Morris, his foot which was very wet was so cold that he felt impelled to go into the house of Ervine Morris to warm and dry. After drying and warming his foot, Turner put his boot back on, and he and his brother started to leave the house.

They got to the front gate when O. O. Turner discovered that he had not sufficiently dried or warmed his foot and he felt that it was imperative for him to return to the fireside he had just left. In the meantime appellant had come into the kitchen of this house. He heard the voices of the Turner brothers out in the front yard. He inquired of those who were in the kitchen as to whether or not the Turner brothers had the rifle which belonged to him and which O. O. Turner had picked up in the altercation at the appellant's home. He was told that O. O. Turner did have it, and he thereupon expressed a determination to go out into the yard and get it. However, those present in the kitchen dissuaded him from his purpose, telling him that they would get the gun the next morning or pay him for it. This seems to have satisfied the appellant. It is not quite clear just what became of the appellant when the Turner brothers came back into the house for O. O. Turner to again dry and warm his foot. At all events, after the Turner brothers had sufficiently rested and warmed themselves this second time, they again went out into the front yard for the purpose of continuing their journey homewards. From now on the evidence for the commonwealth and that of the appellant do not agree. The commonwealth established that, when the Turner brothers got out into the yard this second time, they heard the voice of the appellant coming to them from the back of the house and asking that O. O. Turner come on around; that O. O. Turner unsuspectingly walked around the side of the house, and that, as he did so, the appellant opened fire upon him and killed him. Appellant's evidence tended to establish that when the Turner brothers got out in the front yard they heard Morris talking back of the house, that O. O. Turner with an oath said he would get Morris, that he went around the side of the house in a menacing attitude, and that Morris, thinking his life was in danger, killed him. From this summary of the evidence it needs no argument to support the proposition that this was a case for the jury, and that its verdict finds ample support in the testimony. Branham v. Commonwealth, 223 Ky. 233, 3 S. W. (2d) 629. It results therefore that there is no merit in the first two grounds relied upon for reversal.

Perceiving no error prejudicial to the substantial rights of the appellant, we must affirm the judgment.