## St. Clair v. Commonwealth.

(Decided May 27, 1932.)

R. B. BIRD and J. J. FELTON for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On September 26, 1930, the defendant, A. F. St. Clair, was jointly indicted with F. E. Miller, R. H. Miller, W. H. Davis, and H. C. Taylor in the Rockcastle circuit court on the charge of conspiracy to defraud the People's Bank of Mt. Vernon, Ky.

This cause later coming on for trial, the defendant moved for a severance, and, the court having sustained his motion, the commonwealth elected to try the defendant, and on October 2 he was convicted and sentenced to five years in the state prison.

His motion and grounds for a new trial being over-ruled, he prosecutes this appeal seeking a reversal of the judgment.

On or about April 22, 1930, the People's Bank of Mt. Vernon, Ky., closed its doors and has since been in the process of liquidation. The failure of this bank was brought about by the alleged conspiracy of Floyd Miller, cashier, R. H. Miller, assistant cashier, H. C. Taylor and W. H. Davis, bookkeepers, and the appellant, all of whom were jointly indicted for their alleged conspiracy to defraud the bank, under which conspiracy much of the bank's moneys were converted to the use and benefit of the alleged conspirators to the loss and injury of the bank and the public generally.

It appears that their method employed in carrying out this fraudulent scheme of cheating the bank out of its moneys, as described by W. H. Davis, a bookkeeper in the bank who testified for the commonwealth, and Gus Carson, a state bank examiner and liquidating agent of the People's Bank, was to take from the savings account sheets amounts which they then transferred to themselves and to appellant as credits on their accounts. By this process these four officers and appellant charged with the conspiracy converted to their benefit, it is in evidence, some $36,000 of the bank's moneys without the knowledge of the bank's directors. Also, pursuant to this method of thus cheating the bank of its moneys on May 4, 1929, the appellant received a checking account credit of $2,250, entered thereon by Miller, cashier, for which he did not deposit any money or other thing of value and to which credit he was not entitled.

It appears that like false entries were made on numerous other previous occasions, and that this method had been followed by this bank's officials for a year or so, whereby they had jointly secured, as stated, some $36,000 or more of the bank's moneys.

The evidence does not clearly disclose for what purposes or uses the appellant checked out this $2,250 fraudulently credited to his account as stated, though it appears that his account stood overdrawn in practically such amount on that date, and the transfer from the savings account to his account made by the cashier, Miller, was done for the purpose of balancing the ac-

count upon the books so as to pass the inspection of the bank examiners.

It is further shown that at the time the bank was closed in April, 1930, because of its insolvency, the appellant owed the bank over ˙$13,000, most of which amount had been loaned him by the indicted officers of the bank on his notes without security therefor, and when he was practically without property, making the notes of no worth or value.

The appellant was jointly indicted with the bank's four above-named officers in September, 1930, and charged with conspiring in this scheme of cheating and wrecking the bank. Upon being tried and found guilty of the charge, appellant was sentenced to five years in the penitentiary.

Seeking to reverse this judgment, appellant urges three grounds in support of his appeal.

1. The lower court erred in refusing to grant a continuance.

2. The defense was uncontroverted.

3. Misconduct of employed prosecutor.

First we will consider the objection urged that the lower court erred in refusing to grant a continuance.

Motion for continuance, which was refused, was made at the September term, 1931, of the court, about a year after appellant's indictment. The affidavit filed in support of the motion, it appears, was defective (1) in failing to aver that the two witnesses therein named as absent, and whose testimony is averred was material and necessary for his defense, were not absent by procurement or with the consent of appellant; (2) in failing to state that the facts to which it is claimed the witnesses would testify were true or by appellant known or believed to be true; (3) in failing to state that the witnesses were within the jurisdiction of the court; and (4) in failing to show the date on which subpœnas were issued or the time they were placed in the hands of the officers for execution, though this failure of allegation in the affidavit was perhaps cured by the production of the subpœnas in support of the affidavit, thus, by them, giving the dates of their issuance and· return, showing service, which we have held might be so used for showing due diligence.

Under section 189 of the Criminal Code of Practice and section 315 of the Civil Code of Practice, their provisions would require the affidavit to contain the statements above referred to as omitted therefrom, and therefore it would follow .that the trial court committed no error in refusing to grant the motion for continuance when supported by such insufficient affidavit therefor. Douthitt v. Commonwealth, 179 Ky. 192, 200 S. W. 466; Belcher v. Commonwealth, 216 Ky. 126, 287 S. W. 550. This complaint of appellant, because of the court's refusal of the moved continuance, is without merit, for the further reason that such ground of error is not set out nor contained in his motion and grounds for a new trial, but is only named and urged in his bill of exceptions. This court has held that such grounds of objection must be presented both in the motion and grounds for a new trial as well as later in the bill of exceptions. In the case of Thompson v. Commonwealth, 122 Ky. 501, 91 S. W. 701, 703, the rule is thus stated:

"From these Code provisions and the various decisions relating thereto, the rule may be deduced that with the exception of errors committed in the admission or rejection of evidence to which proper objection and exception must be made and taken at the time and appear in the bill of exceptions it is necessary to point out in a motion for a new trial all errors committed during the progress of the trial upon which it is intended to rely in this court, or they cannot be considered on appeal, nor will this court, except in the matter of instructions, consider errors that appear for the first time in a motion for a new trial—Kennedy v. Commonwealth, 14 Bush, 340; Vinegar v. Commonwealth (104 Ky. 106), 46 S. W. 510, 20 Ky. Law Rep. 412; Johnson v. Commonwealth, 55 S. W. 437, 21 Ky. Law Rep. 1421; Fuqua v. Commonwealth, 73 S. W. 782, 24 Ky. Law Rep. 2204; Howard v. Commonwealth, 67 S. W. 1003, 24 Ky. Law Rep. 91; Smith v. Commonwealth (119 Ky. 280), 83 S. W. 647, 26 Ky. Law Rep. 1229. The errors except as to instructions must be presented in a bill of exceptions prepared as provided in section 282 of the Criminal Code of Practice, and when the errors are thus shown in the bill of exceptions properly objected and excepted to, they must, except as to error in the admission or rejection of evidence, also

be pointed out and relied on in the motion and grounds for a new trial."

However, this court has, since handing down this opinion, modified the rule so stated by omitting the exception therefrom as to errors committed in the admission or rejection of evidence and requiring that such error must now also be stated in motion and grounds for a new trial in order to preserve right for their review upon appeal. Jones v. Com., 238 Ky. 453, 38 S. W. (2d) 251.

Appellant next complains that his defense is uncontroverted, and that therefore the verdict of the jury should be set aside. But, again, we are of the opinion that this objection is not to be sustained as meritorious, even though the evidence produced by the commonwealth in support of the issue was far from convincing.

Appellant testifies that he did not know that the fraudulent entry of $2,250 had been made upon his account by the bank's officials on May 4, 1929, which fact is charged in the indictment as having been made by the bank's officials, or some of them, pursuant to a fraudulent scheme of conspiracy to cheat the bank of its funds thereby and as having been made by them without any deposit of money or other thing of value made the bank by appellant therefor. Appellant states that this entry of credit was made by Miller to cover his then overdraft at the bank in such amount, and that Floyd Miller, the cashier, had told him that he would try to place to his credit to care for this overdraft a collection he would try to make for him from his mother, Mrs. Miller, of some $2,900 claimed as then owing the appellant by Mrs. Miller, and that he had supposed he had done so. Miller corroborates appellant in this.

By the commonwealth's witnesses it is shown that there was a regular practice on the part of these conspiring bank officials to transfer from the savings accounts of the bank's patrons from time to time desired amounts to their own accounts, and that such practice was observed and followed by them in making this false credit entry upon appellant's account, and that the instances of such practice were kept hidden and concealed from the bank directors, as the scheme effected a conversion of the bank's funds to their own accounts,

resulting in the cheating of the bank by the amount of such transfers.

The evidence was conflicting upon the questions of whether this credit entry had been made upon the appellant's account pursuant to a conspiracy had with him and made by his agreement, knowledge, and consent given said named bank officials.

It was further undisputed that the appellant had paid an execution debt of some $800 to the bank by his check given its attorney therefor, at a time when he had no funds whatever in the bank, which however was paid by the bank, through one of these indicted officials, at a time when it already held the appellant's worthless notes for the sum of some $10,000.

The character of these negotiations and the circumstances of the parties in respect to their intimate banking relations and dealings, coupled with the fact that the appellant, though hopelessly insolvent, continued to be favored with such credits fraudulently made upon his bank account, were all evidential matters which could be considered by the jury as tending to show the existence of such charged conspiracy between the appellant and the said bank officials. A conspiracy may be proved by such facts and circumstances from which the jury may infer it. Robersons New Criminal Law and Procedure, p. 326. Also in the case of Skillian v. Commonwealth, 206 Ky. 586, 268 S. W. 299, 301. the court said:

> "It is a recognized rule that direct evidence of the existence of a conspiracy is not essential, but that its existence may be shown by facts and circumstances, and we see no reason why, if these potent facts which we have recited were believed by the jury, it would not have been justified in finding the existence of such a conspiracy, or that they did not at least make out what is referred to in some of the opinions as a prima facie case of conspiracy."

The jury to which this conflicting evidence was submitted were the proper judges of the weight they would give to the testimony of the witnesses, including that of the self-confessed conspirators, Floyd Miller and W. H. Davis. The jury was not composed of mere automatons, but reasonable men, with the right and capacity

to make reasonable inferences from the facts in evidence before them, and, having made their decision, the verdict rendered by them should not now be by us disturbed, as it is neither within our province nor our right to constitute ourselves a jury to make a refinding of the verdict herein.

Finally, the appellant contends that the remarks made by the employed attorney for the commonwealth in his closing argument were outside the record and of such objectionable and defamatory character as to have resulted in the denial of a fair and impartial trial to the appellant; that these remarks were objected to at the time made and the court requested to admonish the jury as to them, but such admonition was not given nor objection sustained. The objectionable remarks complained of were as follows:

"The fact that this man, St. Clair, got $2,250 of the people's money and did not pay it back is enough to send him to the penitentiary.

"If you acquit this man for this system of robbery I hope you will lose every dollar you have in the bank before midnight.

"It is a reasonable inference that this man, St. Clair, was drawing this money out of the bank to buy material for the Miller Waterworks that was being operated by Floyd and the Miller family.

"The purpose of this trial is to show the people, men, women and children, that they can't steal the people's money and get by with it."

Counsel for appellant in his brief very earnestly argues that the making of these remarks constituted grounds for this court reversing the judgment of the lower court, and thereby granting appellant a new trial.

It should, however, be noted that the indictment in this case charged the appellant with conspiring to cheat the bank of its funds through feloniously converting them to the conspirators' use. Although the argument of counsel may have been improper and uncalled for as to some of the remarks complained of, yet such were not substantially prejudicial as based upon issues outside the record and as drawing inferences from facts foreign to it.

While we are in hearty and full accord with the

criticisms and holding of the court in the numerous cases cited by appellant condemning inflammatory and prejudicial argument based upon facts and issues outside the record had upon the trial, we are of the opinion that the argument of counsel complained of herein was not of such objectionable or prejudicial nature as to justify us in holding that because thereof the appellant has failed to receive a fair and impartial trial or has been thereby prejudicially injured in his substantial rights.

Therefore, for the reasons above indicated, the judgment is affirmed.