## Hanks v. Commonwealth.

(Decided March 17, 1933.)

MARCUS C. REDWINE for appellant.

BAILEY P. WOOTTON, Attorney General, and FRANCIS M. BURKE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Kenneth Hanks, Earnest Cole Henry, and Joe Noland were jointly indicted and tried for the crime of housebreaking. They were convicted and the punishment of each was fixed at three years' confinement in the state penitentiary. Kenneth Hanks alone has appealed and a number of grounds for a reversal of the judgment are advanced which will be considered in the order in which they are argued in appellant's brief.

One of the grounds is alleged insufficiency of the evidence and this requires a brief resumé of the facts. On June 2, 1932, seven or eight persons, including appellant, left Winchester, Ky., and went to the Kentucky river near the mouth of Four Mile creek to camp. About 6 o'clock in the evening Joe Noland, Earnest Cole Henry, and Henry Holland left the camp and returned to Winchester in an automobile. Helen Monroe, Mrs. Henry Holland, and Roy Henry, a brother of Earnest Cole Henry, remained at the camp. Helen

Monroe requested those going to Winchester to bring her sister, Juanita Monroe, who was 13 years of age, to the camp when they returned. The four men accompanied by Juanita Monroe left Winchester between 9 and 10 o'clock. Juanita Monroe testified that the car was stopped on the side of the road between Winchester and the camp; that all of the men got out and soon returned with a cot, bedclothing, and a trunk, all of which was placed in the car and taken to the camp. The trunk was locked and it was broken open with a sledge hammer. It was filled with men's clothing and other wearing apparel.

On the following morning the camp was visited by Ben Allen, deputy jailer of Clark county, and Will Boone. They were searching for articles stolen the night before from an outbuilding on the premises of George Tomlinson and which had been broken into. Tomlinson's home was on the road traveled by appellant and his companions in going from Winchester to the camp. On the night of June 2, 1932, an outbuilding in his yard was broken into and a trunk, a cot, and some bedclothing were stolen. The articles stolen belonged to Mrs. Fannie Hon. Allen and Boone did not divulge the purpose of their visit to the camp but they saw the cot and returned to Winchester to procure warrants. After they left the camp the men present, except Roy Henry, tied rocks to the trunk and the cot and placed them in the river where they were found a day or two later. Mrs. Hon identified the articles as her property. Henry Holland, who was an ex-convict, appears to have been the moving spirit in all that was done, but there is evidence that appellant and his co-defendants assisted in obtaining the trunk and other articles and later in concealing them in the river. Most of the acts that took place at the camp were testified to by Helen Monroe, but her testimony is corroborated by other witnesses. There was ample evidence tending to connect appellant with the crime and his contention that the verdict is not sustained by the evidence cannot be sustained.

It is argued that the testimony of Helen Monroe and Juanita Monroe was obtained by duress and should not have been admitted and without which there is not sufficient evidence to sustain the conviction. Helen Monroe was arrested and confined in jail for a few days

and while there she and her sister signed written statements in which they disclosed the facts to which they afterwards testified on the trial. They testified that these statements were made under duress but they admitted that they were not under duress when they testified at the trial and that the facts then testified to ·by them were true. The written statements, on appellant's motion, were excluded and even if they had been obtained by threats and duress Helen Monroe and her sister were not precluded thereby from being used as witnesses at the trial.

The appellant failed to testify and he now insists that the court should have instructed the jury that his failure to testify raised no presumption of guilt. Such an instruction was condemned in Tines v. Commonwealth (Ky.) 77 S. W. 363, 364, 25 Ky. Law Rep. 1233, and Armstrong v. Commonwealth, 190 Ky. 217, 227 S. W. 162. In condemning the instruction in the Tines Case it was said:

"The court, by the instruction in question, did appellant the very injury which it is the object of the law to prevent. Appellant was entitled to absolute silence on his failure to testify in his own behalf."

It also is argued that the commonwealth's attorney made an improper argument and that the court erred in overruling appellant's motion for a separate trial, but neither of these grounds is relied on in the motion and grounds for a new trial and therefore cannot be considered. Wootton v. Commonwealth, 245 Ky. 266, 53 S. W. (2d) 557; St. Clair v. Commonwealth, 245 Ky. 730, 54 S. W. (2d) 1; Morris v. Commonwealth, 235 Ky. 336, 31 S. W. (2d) 381; Lunce v. Commonwealth, 223 Ky. 566, 4 S. W. (2d) 362. It may be said in passing that an objection to the argument of the commonwealth's attorney, which it is claimed was improper, was sustained and the court admonished the jury not to consider it. The statement which is charged to be improper, was: "No one denies the commission of the crime." It is argued that this statement violates the inhibition found in section 1645 of the Kentucky Statutes forbidding comment on the defendant's failure to testify in a criminal case, but we held to the contrary in Divine v. Commonwealth, 236 Ky. 579, 33 S. W. (2d) 627, and Ridner v. Commonwealth, 242 Ky. 557, 46 S. W. (2d) 1102.

Finding no error prejudicial to appellant's substantial rights, the judgment is affirmed.