GRIFFIN, PETITIONER, *v.* THE STATE OF CALIFORNIA.

(No. 202—Decided April 28, 1965.)

*Mr. Morris Lavine,* for petitioner.

*Mr. Albert W. Harris, Jr.,* deputy attorney general, *Mr. Thomas C. Lynch,* attorney general, *Mr. Arlo E. Smith,* chief assistant attorney general, and *Mr. Derald E. Granberg,* deputy attorney general.

DOUGLAS, J.   Petitioner was convicted of murder in the first degree after a jury trial in the California court. He did not testify at the trial on the issue of guilt, though he did testify at the separate trial[1] on the issue of penalty.   The trial court instructed the jury on the issue of guilt, stating that a defend-

[1] See Penal Code Section 190.1, providing for separate trials on the two issues.

128

ant has a constitutional right not to testify. But it told the jury:[2]

"As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."

It added, however, that no such inferences could be drawn as to evidence respecting which he had no knowledge. It stated that failure of a defendant to deny or explain the evidence of which he had knowledge does not create a presumption of guilt nor by itself warrant an inference of guilt nor relieve the prosecution of any of its burden of proof.

Petitioner had been seen with the deceased the evening of her death, the evidence placing him with her in the alley where her body was found. The prosecutor made much of the failure of petitioner to testify:

"The defendant certainly knows whether Essie Mae had this beat up appearance at the time he left her apartment and went down the alley with her.

"What kind of man is it that would want to have sex with a woman that beat up if she was beat up at the time he left?

"He would know that. He would know how she got down the alley. He would know how the blood got on the bottom of the concrete steps. He would know how long he was with her in that box. He would know how her wig got off. He would know whether he beat her or mistreated her. He would know whether he walked away from that place cool as a cucumber when he saw Mr. Villasenor because he was conscious of his own guilt and wanted to get away from that damaged or injured woman.

---

[2] Article I, Section 13 of the California Constitution provides in part: "* * * in any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury."

"These things he has not seen fit to take the stand and deny or explain.

"And in the whole world, if anybody would know, this defendant would know.

"Essie Mae is dead, she can't tell you her side of the story. The defendant won't."

The death penalty was imposed and the California Supreme Court affirmed. 60 Cal. 2d 182, 32 Cal. Rptr. 23, 383 P. 2d 432. The case is here on a petition for a writ of certiorari which we granted, 377 U. S. 989, 84 S. Ct. 1926, 12 L. Ed. 2d 1043, to consider the single question whether comment on the failure to testify violated the Self-Incrimination Clause of the Fifth Amendment which we made applicable to the States by the Fourteenth in *Malloy* v. *Hogan,* 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653, decided after the Supreme Court of California had affirmed the present conviction.[3]

If this were a federal trial, reversible error would have been committed. *Wilson* v. *United States,* 149 U. S. 60, 13 S. Ct. 765, 37 L. Ed. 650, so holds. It is said, however, that the

---

[3] The California Supreme Court later held in *People* v. *Modesto,* 62 A. C. 452, 42 Cal. Rptr. 417, 398 P. 2d 753, that its "comment" rule squared with *Malloy* v. *Hogan,* 378 U. S. 1, 84 S. Ct. 1489. The overwhelming consensus of the States, however, is opposed to allowing comment on the defendant's failure to testify. The legislatures or courts of 44 States have recognized that such comment is, in light of the privilege against self-incrimination, "an unwarrantable line of argument." *State* v. *Howard,* 35 S. C. 197, 14 S. E. 481, 483. See 8 Wigmore, Evidence (McNaughton rev. ed. 1961 and 1964 Supp.), Section 2272, n. 1. Of the six States which permit comment, two, California and Ohio, give this permission by means of an explicit constitutional qualification of the privilege against self-incrimination. Cal. Const. Art. I, Section 13; Ohio Const. Art. I, Section 10. New Jersey permits comment, *State* v. *Corby,* 28 N. J. 106, 145 A. 2d 289; cf. *State* v. *Garvin,* 44 N. J. 268, 208 A. 2d 402 (Mar. 22, 1965); but its constitution contains no provision embodying the privilege against self-incrimination (see *Laba* v. *Newark Bd. of Educ.,* 23 N. J. 364, 389, 129 A. 2d 273, 287; *State* v. *White,* 27 N. J. 158, 168-169, 142 A. 2d 65, 70). The absence of an express constitutional privilege against self-incrimination also puts Iowa among the six. See *State* v. *Ferguson,* 226 Iowa 361, 372-373, 283 N. W. 917, 923. Connecticut permits comment by the judge but not by the prosecutor. *State* v. *Heno,* 119 Conn. 29, 174 A. 181, 94 A. L. R. 696. New Mexico permits comment by the prosecutor but holds that the accused is then entitled to an instruction that "the jury shall indulge no presumption against the accused because of his failure to testify." N.M. Stat. Ann. Section 41-12-19; *State* v. *Sandoval,* 59 N. M. 85, 279 P. 2d 850.

*Wilson* decision rested not on the Fifth Amendment but on an Act of Congress. 18 U. S. C. Section 3481.[4] That indeed is the fact, as the opinion of the Court in the *Wilson case* states. And see *Adamson* v. *California*, 332 U. S. 46, 50, n. 6, 67 S. Ct. 1672, 1674, 91 L. Ed. 1903; *Bruno* v. *United States*, 308 U. S. 287, 294, 60 S. Ct. 198, 200, 84 L. Ed. 257. But that is the beginning, not the end of our inquiry. The question remains whether, statute or not, the comment rule, approved by California, violates the Fifth Amendment.

We think it does. It is in substance a rule of evidence that allows the State the privilege of tendering to the jury for its consideration the failure of the accused to testify. No formal offer of proof is made as in other situations; but the prosecutor's comment and the court's acquisence are the equivalent of an offer of evidence and its acceptance. The Court in the *Wilson case* stated:

"* * * the Act was framed with a due regard also to those who might prefer to rely upon the presumption of innocence which the law gives to every one, and not wish to be witnesses. It is not every one who can safely venture on the witness stand, though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices

---

[4] Section 3481 reads as follows:

"In trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness. His failure to make such request shall not create any presumption against him. June 25, 1948, c. 645, 62 Stat. 833."

The legislative history shows that 18 U. S. C. Section 3481 was designed, *inter alia*, to bar counsel for the prosecution from commenting on the defendant's refusal to testify. Mr. Frye of Maine, spokesman for the Bill, said, "That is the law of Massachusetts, and we proposed to adopt it as a law of the United States." 7 Cong. Rec. Pt. I, p. 385. The reference was to Mass. Stat. 1866, c. 260, now Mass. Gen. Laws Ann., c. 233, Section 20, cl. Third (1959), which is almost identical with 18 U. S. C. Section 3481. See also *Commonwealth* v. *Harlow*, 110 Mass. 411; *Commonwealth* v. *Scott*, 123 Mass. 239; Opinion of the Justices, 300 Mass. 620, 15 N. E. 2d 662.

against him. It is not every one, however honest, who would therefore willingly be placed on the witness stand. The statute, in tenderness to the weakness of those who from the causes mentioned might refuse to ask to be witnesses, particularly when they may have been in some degree compromised by their association with others, declares that the failure of a defendant in a criminal action to request to be a witness shall not create any presumption against him.'' 149 U. S. p. 66, 13 S. Ct. p. 766.

If the words ''Fifth Amendment'' are substituted for ''Act'' and for ''statute'' the spirit of the Self-Incrimination Clause is reflected. For comment on the refusal to testify is a remnant of the ''inquisitorial system of criminal justice,'' *Murphy* v. *Waterfront Comm.*, 378 U. S. 52, 55, 84 S. Ct. 1594, 1596, 12 L. Ed. 2d 678, which the Fifth Amendment outlaws.[5] It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. *People* v. *Modesto*, 62 A. C. 468-469, 42 Cal. Rptr. 417, 398 P. 2d 753. What the jury may infer given no help from the court is one thing. What they may infer when the court solemnizes the silence of the accused into

[5] Our decision today that the Fifth Amendment prohibits comment on the defendant's silence is no innovation, for on a previous occasion a majority of this Court indicated their acceptance of this proposition. In *Adamson* v. *California*, 332 U. S. 46, 67 S. Ct. 1672, the question was, as here, whether the Fifth Amendment proscribed California's comment practice. The four dissenters (Black, Douglas, Murphy and Rutledge, JJ.) would have answered this question in the affirmative. A fifth member of the Court, Justice Frankfurter, stated in a separate opinion: "For historical reasons a limited immunity from the common duty to testify was written into the Federal Bill of Rights, and I am prepared to agree that, as part of that immunity, comment on the failure of an accused to take the witness stand is forbidden in federal prosecutions." *Id.*, at 61, 67 S. Ct. at 1680. But, though he agreed with the dissenters on this point, he also agreed with Justices Vinson, Reed, Jackson, and Burton that the Fourteenth Amendment did not make the Self-Incrimination Clause of the Fifth Amendment applicable to the States; thus he joined the opinion of the Court which so held (the Court's opinion assumed that the Fifth Amendment barred comment, but it expressly disclaimed any intention to decide the point. *Id.*, at 50, 67 S. Ct. at 1674).

evidence against him is quite another. That the inference of guilt is not always so natural or irresistible is brought out in the *Modesto* opinion itself:

"Defendant contends that the reason a defendant refuses to testify is that his prior convictions will be introduced in evidence to impeach him ([Cal.] Code Civ. Proc. Section 2051) and not that he is unable to deny the accusations. It is true that the defendant might fear that his prior convictions will prejudice the jury, and therefore another possible inference can be drawn from his refusal to take the stand." *Id.*, at 469, 42 Cal. Rptr. at 427, 398 P. 2d at 763.

We said in *Malloy* v. *Hogan, supra,* 378 U. S. p. 11, 84 S. Ct. p. 1495, that "the same standards must determine whether an accused's silence in either a federal or state proceeding is justified." We take that in its literal sense and hold that the Fifth Amendment, in its direct application to the federal government and its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.[6]

*Reversed.*

The CHIEF JUSTICE took no part in the decision of this case.

Mr. Justice HARLAN, concurring. I agree with the Court that within the federal judicial system the Fifth Amendment bars adverse comment by federal prosecutors and judges on a defendant's failure to take the stand in a criminal trial, a right accorded him by that amendment. And given last term's decisions in *Malloy* v. *Hogan,* 378 U. S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653, that the Fifth Amendment applies to the States in all its refinements, I see no legitimate escape from today's decision and therefore concur in it. I do so, however, with great reluctance, since for me the decision exemplifies the creeping paralysis with which this Court's recent adoption of the "incorpora-

---

[6] We reserve decision on whether an accused can require, as in *Bruno* v. *United States,* 308 U. S. 287, 60 S. Ct. 198, 84 L. Ed. 257, that the jury, be instructed that his silence must be disregarded.

tion" doctrine is infecting the operation of the federal system. See my concurring opinion in *Pointer* v. *State of Texas,* 380 U. S. 400, 85 S. Ct. 1065.

While I would agree that the accusatorial rather than inquisitorial process is a fundamental part of the "liberty" guaranteed by the Fourteenth Amendment, my Brother STEWART in dissent, post, this page, fully demonstrates that the no-comment rule "might be lost, and justice still be done," *Palko* v. *Connecticut,* 302 U. S. 319, 325, 58 S. Ct. 149, 152, 82 L. Ed. 288. As a "non-fundamental" part of the Fifth Amendment (cf. *Pointer,* 380 U. S. at 400, 85 S. Ct. 1065), I would not, but for *Malloy,* apply the no-comment rule to the States.

*Malloy* put forward a single argument for applying the Fifth Amendment, *as such,* to the States:

"It would be *incongruous* to have different standards determine the validity of a claim of privilege * * *, depending on whether the claim was asserted in a state or federal court. Therefore, the same standards must determine whether an accused's silence in either a federal or state proceeding is justified." *Malloy* v. *Hogan, supra,* 378 U. S. at 11, 84 S. Ct. at 1495. (Emphasis added.)

My answer then (378 U. S. at 27, 84 S. Ct. at 1503) and now is that "incongruity," within the limits of fundamental fairness, is at the heart of our federal system. The powers and responsibilities of the State and Federal Governments are not congruent, and under the Constitution they are not intended to be.

It has also recently been suggested that measuring state procedures against standards of fundamental fairness as reflected in such landmark decisions as *Twining* v. *New Jersey,* 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97, and *Palko* v. *Connecticut, supra,* "would require this Court to intervene in the state judicial process with considerable lack of predictability and with a consequent likelihood of considerable friction," *Pointer* v. *Texas,* 380 U. S. 400, 85 S. Ct. 1065, 1073 (concurring opinion of Goldberg, J.). This approach to the requirements of federalism, not unlike that evinced by the Court in *Henry* v. *Mississippi,* 379 U. S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408, apparently leads, in cases like this, to the conclusion that the way to eliminate

friction with state judicial systems is not to attempt a working harmony, but to override them altogether.

Although compelled to concur in this decision, I am free to express the hope that the Court will eventually return to constitutional paths which, until recently, it has followed throughout its history.

Mr. Justice STEWART, with whom Mr. Justice WHITE joins, dissenting.

The petitioner chose not to take the witness stand at his trial upon a charge of first degree murder in a California court. Article I, Section 13 of the California Constitution establishes a defendant's privilege against self-incrimination and further provides:

"[I]n any criminal case, whether the defendant testifies or not, his failure to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury."

In conformity with this provision, the prosecutor in his argument to the jury emphasized that a person accused of crime in a public forum would ordinarily deny or explain the evidence against him if he truthfully could do so.[1] Also in conformity with this California constitutional provision, the judge instructed the jury in the following terms:

"It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus, whether or not he does testify rests entirely in his own decision. As to any evidence or facts against him which the defendant can reasonably be expected to deny or explain because of facts within his knowledge, if he does not testify, or if, though he does testify, he fails to deny or explain such evidence, the jury may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it

---

[1] See the excerpt from the prosecutor's argument quoted in the Court's opinion, *supra.*

should be noted that if a defendant does not have the knowledge that he would need to deny or explain any certain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

The jury found the petitioner guilty as charged, and his conviction was affirmed by the Supreme Court of California.[2]

No claim is made that the prosecutor's argument or the trial judge's instructions to the jury in this case deprived the petitioner of due process of law as such. This Court long ago decided that the Due Process Clause of the Fourteenth Amendment does not of its own force forbid this kind of comment on a defendant's failure to testify. *Twining* v. *New Jersey,* 211 U. S. 78, 29 S. Ct. 14; *Adamson* v. *California,* 332 U. S. 46, 67 S. Ct. 1672. The Court holds, however, that the California constitutional provision violates the Fifth Amendment's injunction that no person "shall be compelled in any criminal case to be a witness against himself," an injunction which the Court less than a year ago for the first time found was applicable to trials in the courts of the several States.

With both candor and accuracy, the Court concedes that the question before us is one of first impression here.[3] It is a ques-

---

[2] 60 Cal. 2d 182, 32 Cal. Rptr. 24, 383 P. 2d 432. As this case was decided before *Malloy* v. *Hogan,* 378 U. S. 1, 84 S. Ct. 1489, the California Supreme Court did not give plenary consideration to the question now before us; however, that court has since upheld the federal constitutionality of the California comment rule in a thoroughly reasoned opinion by Chief Justice Traynor. *People* v. *Modesto,* 62 Cal. 2d 452, 42 Cal. Rptr. 417, 398 P. 753.

[3] In the *Adamson case,* the present question was not reached because the majority ruled that the Fifth Amendment is not applicable to the States. Mr. Justice Reed's opinion made clear that the California rule was only assumed to contravene the Fifth Amendment, "without any intention * * * of ruling upon the issue." The dissenting opinion of Mr. Justices Black and Douglas read the majority opinion as "strongly [implying] that the Fifth Amendment does not, of itself, bar comment upon failure to testify," but they considered the case on the majority's assumption, thereby giving no approval to that

tion which has not arisen before, because until last year the self-incrimination provision of the Fifth Amendment had been held to apply only to federal proceedings, and in the federal judicial system the matter has been covered by a specific Act of Congress which has been in effect ever since defendants have been permitted to testify at all in federal criminal trials.[4] See *Bruno* v. *United States,* 308 U. S. 287, 60 S. Ct. 198; *Wilson* v. *United States,* 149 U. S. 60, 13 S. Ct. 765; *Adamson* v. *California, supra.*

We must determine whether the peitioner has been "compelled to be a witness against himself." Compulsion is the focus of the inquiry. Certainly, if any compulsion be detected in the California procedure, it is of a dramatically different and less palpable nature than that involved in the procedures which historically gave rise to the Fifth Amendment guarantee. When a suspect was brought before the Court of High Commission or the Star Chamber, he was commanded to answer whatever was asked of him, and subjected to a far-reaching and deeply probing inquiry in an effort to ferret out some unknown and frequently unsuspected crime. He declined to answer on pain of incarceration, banishment, or mutilation. And if he spoke falsely, he was subject to further punishment. Faced with this formidable array of alternatives, his decision to speak was unquestionably coerced.[5]

Those were the lurid realities which lay behind enactment of the Fifth Amendment, a far cry from the subject matter of the case before us. I think that the Court in this case stretches the concept of compulsion beyond all reasonable bounds, and that whatever compulsion may exist derives from the defendant's choice not to testify, not from any comment by court or counsel. In support of its conclusion that the California pro-

---

assumption, even in dictum. That no such approval was given by this dissenting opinion is further made evident by the fact that Justices Murphy and Rutledge, also in dissent, felt it necessary to make what they characterized as an "addition" an expression of their view that the guarantee against self-incrimination had been violated in the case. Mr. Justice Frankfurter, in concurring, also indicated that he was prepared to agree that the Fifth Amendment barred comment, thus bringing to three the members of the Court who, in dicta, took the view embraced by the Court today.

[4] 20 Stat. 30, as amended 18 U. S. C. Section 3481.

[5] See generally 8 Wigmore, Section 2250 (McNaughton Rev. 1961).

cedure does compel the accused to testify, the Court has only this to say: "It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly." Exactly what the penalty imposed consists of is not clear. It is not, as I understand the problem, that the jury becomes aware that the defendant has chosen not to testify in his own defense, for the jury will, of course, realize this quite evident fact, even though the choice goes unmentioned. Since comment by counsel and the court does not compel testimony by creating such an awareness, the Court must be saying that the California constitutional provision places some other compulsion upon the defendant to incriminate himself, some compulsion which the Court does not describe and which I cannot readily perceive.

It is not at all apparent to me, on any realistic view of the trial process, that a defendant will be at more of a disadvantage under the California practice than he would be in a court which permitted no comment at all on his failure to take the witness stand. How can it be said that the inferences drawn by a jury will be more detrimental to a defendant under the limiting and carefully controlling language of the instruction here involved than would result if the jury were left to roam at large with only their untutored instincts to guide them, to draw from the defendant's silence broad inferences of guilt? The instructions in this case expressly cautioned the jury that the defendant's failure to testify "does not create a presumption of guilt or by itself warrant an inference of guilt"; they were further admonished that such failure does not "relieve the prosecution of its burden of proving every essential element of the crime," and finally the trial judge warned that the prosecution's burden remained that of proof "beyond a reasonable doubt." Whether the same limitations would be observed by a jury without the benefit of protective instructions shielding the defendant is certainly open to real doubt.

Moreover, no one can say where the balance of advantage might lie as a result of counsel's discussion of the matter. No doubt the prosecution's argument will seek to encourage the drawing of inferences unfavorable to the defendant. However, the defendant's counsel equally has an opportunity to explain

the various other reasons why a defendant may not wish to take the stand, and thus rebut the natural if uneducated assumption that it is because the defendant cannot truthfully deny the accusations made.

I think the California comment rule is not a coercive devise which impairs the right against self-incrimination, but rather a means of articulating and bringing into the light of rational discussion a fact inescapably impressed on the jury's consciousness. The California procedure is not only designed to protect the defendant against unwarranted inferences which might be drawn by an uninformed jury; it is also an attempt by the State to recognize and articulate what it believes to be the natural probative force of certain facts. Surely no one would deny that the State has an important interest in throwing the light of rational discussion on that which transpires in the course of a trial, both to protect the defendant from the very real dangers of silence and to shape a legal process designed to ascertain the truth.

The California rule allowing comment by counsel and instruction by the judge on the defendant's failure to take the stand is hardly an idiosyncratic aberration. The Model Code of Evidence, and the Uniform Rules of Evidence both sanction the use of such procedures.[6] The practice had been endorsed by resolution of the American Bar Association and the American Law Institute,[7] and has the support of the weight of scholarly opinion.[8]

The formulation of procedural rules to govern the administration of criminal justice in the various States is properly a matter of local concern. We are charged with no general supervisory power over such matters; our only legitimate func-

---

[6] Model Code of Evidence, Rule 201 (1942); Uniform Rules of Evidence, Rule 23(4) (1953).

[7] 56 A. B. A. Rep. 137-159 (1931); 59 A. B. A. Rep. 130-141 (1934); 9 Proceedings A. L. I. 202, 203 (1931).

[8] See Bruce, The Right to Comment on the Failure of the Accused to Testify, 31 Mich. L. Rev. 226; Dunmore, Comment on Failure of Accused to Testify, 26 Yale L. J. 464; Hadley, Criminal Justice in America, 11 A. B. A. J. 674, 677; Hiscock Criminal Law and Procedure in New York, 26 Col. L. Rev. 253, 258-262; Note, Comment on Defendant's Failure to Take the Stand, 57 Yale L. J. 145.

tion is to prevent violations of the Constitution's commands. California has honored the constitutional command that no person "shall be compelled in any criminal case to be a witness against himself." The petitioner was not compelled to testify, and he did not do so. But whenever in a jury trial a defendant exercises this constitutional right, the members of the jury are bound to draw inferences from his silence. No constitution can prevent the operation of the human mind. Without limiting instructions, the danger exists that the inferences drawn by the jury may be unfairly broad. Some States have permitted this danger to go unchecked, by forbidding any comment at all upon the defendant's failure to take the witness stand.[9] Other States have dealt with this danger in a variety of ways, as the Court's opinion indicates. *Supra,* note 3 at page 442. Some might differ, as a matter of policy, with the way California has chosen to deal with the problem, or even disapprove of the judge's specific instructions in this case.[10] But, so long as the constitutional command is obeyed, such matters of state policy are not for this Court to decide.

I would affirm the judgment.

---

[9] See, e. g., *State* v. *Pearce,* 56 Minn. 226, 57 N. W. 652, 1065; *Tines* v. *Commonwealth,* 77 S. W. 263, 25 Ky. L. Rep. 1233; *Hanks* v. *Commonwealth,* 248 Ky. 203, 58 S. W. 2d 394.

[10] It should be noted that the defendant's counsel did not request any additions to the instructions which would have brought out other possible reasons which might have influenced the defendant's decision not to become a witness. The California Constitution does not in terms prescribe what form of instruction should be given and the petitioner has not argued that another form would have been denied.