Josephine Linker Hart, Justice, dissenting. In my view, the case before us is another treacherous step on a “slippery slope,” resulting in this court allowing its distaste for mistrials to tramp an accused’s constitutional rights. Paulson relies on three cases. The first is Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), which, as the majority apparently agrees, stands for the proposition that a comment on the failure of a defendant to testify in a criminal case is a violation of the Self-Incrimination Clause of the Fifth Amendment to the United States Constitution. The second, not discussed by the majority, is Mosby v. State, 246 Ark. 963, 440 S.W.2d 230 (1969), where this court reversed a conviction because the circuit court gave an instruction that referred to a defendant’s right to not testify. The instruction stated: A defendant may or may not testify in a case at his own discretion. The fact that a | ^defendant did not testify is not evidence of his guilt or innocence and in fact is no evidence at all and is not to be considered by you in arriving at your verdict. Id. at 964, 440 S.W.2d at 231. The third, albeit distinguished by the majority, is Clark v. State, 256 Ark. 658, 509 S.W.2d 812 (1974), where this court reversed the denial of a mistrial where a remark in opening statement “coerced” the defendant to testify. If you notice, I’m here by myself, and this vacant chair. He might be here to tell his side but he’s not here. The story then that you will have about what happened out there will come from her. Id. at 654, 509 S.W.2d at 813. Notwithstanding the majority’s effort to distinguish Clark, I contend, that Mosby and Clark stand for the broad proposition that a mistrial is appropriate when a reference is made, either directly or indirectly, to a criminal defendant’s failure or refusal to testify at trial. Mosby and Clark have never been overruled. Inexplicably, none of these three worthy precedents have been followed, either at the circuit-court level, or by this court on appeal. Inasmuch as this court has not renounced stare decisis, I can only assume that this court’s stated distaste for mistrials — never favorites of the law— has diverted this court from its mission of zealously defending an individual’s constitutional rights. The consequences are • what we now see before us. My research indicates that the phrase describing a mistrial as “an extreme and drastic remedy” first appeared in a dissent by Justice John Fogleman in Walker v. State, 258 Ark. 676, 681, 488 S.W.2d 40, 42 (1972). Since that time, it has been repeated 435 times in Arkansas appellate-court decisions. Almost invariably, these decisions made a circuit court’s decision not to impose a mistrial more insulated from being reversed on review and therefore, more unlikely to be granted. |fiAs the majority notes, during voir dire of the jury, the prosecutor made the following statement: In this case I expect you are going to hear testimony from children or teenagers. Do each of you feel that you can listen to that testimony and give it the same weight as you would an adult? Would any of you automatically believe the testimony of an -adult over a child? If a child testified they were sexually abused, and an adult said, “No, I didn’t do it,” would you automatically believe that since he [said he] didn’t do it, that created reasonable doubt? . Paulson timely objected, arguing that the prosecutor’s comment had infringed on his right not to testify. The very first argument the State made in defending its question was not that it was proper, but rather that “first of all, a mistrial is an extreme remedy.” Its second argument was that the question was “asked hypothetically.” More telling still is that in overruling the objection, the circuit court’s first words ■were, “Mistrial is a drastic remedy.” Only then did the circuit court state that the question was “a general reference” and that “I don’t think any harm was done.” However,'the State proved to be relentless. As the majority notes, the State again asked the venire, “If a child testified they were sexually assaulted and the adult said it didn’t happen, would any of you feel this automatically creates reasonable doubt?” Again Paulson objected, and asked for a mistrial. Only after the State insisted that it was entitled to an answer did the circuit court admonish the State to “stay away from that issue.” Nonetheless, the circuit court overruled Paulson’s objection. It is disconcerting that a prosecutor, who is sworn to uphold the constitution, would think it proper to so blatantly violate a criminal defendant’s Fifth. Amendment rights: It is 17even more disconcerting that a circuit court would think more of seating a tainted jury panel than upholding the constitutional rights óf an accused. The majority’s first rationale is, of course, that “a mistrial is an extreme and drastic remedy.” I contend that sacrificing the constitutional rights of an accused just to avoid a second trial is far more extreme and drastic. This court’s “extreme remedy” jurisprudence has' landed this state at the very bottom of that slippery slope. While there are several cases that support the proposition that error could be cured by sustaining the objection and giving a cautionary instruction, see, e.g., Green v. State, 2013 Ark. 497, 430 S.W.3d 729, the circuit court here did not even directly acknowledge that the question was improper. Obviously, a cautionary instruction will not be given for an overruled objection. Finally, the majority’s alternative basis for affirming this case, that the statement by the prosecutor was not an impermissible comment on Paulson’s right not to testify at trial because the question was only hypothetical, and Paulson was not referred to by name, is sheer nonsense. Here, the jury tried a single count of rape. Accordingly, there was only one victim arid one perpetrator. Only one person who could possibly deny committing the crime, and that person was sitting at the defendant’s table. It is inconceivable to me that anyone, save for certain Arkansas Supreme Court justices who have supplied me direct evidence to the contrary, could believe that the prosecutor was referring to anyone else. I would reverse and remand this case for a new trial.