THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY POTTER, Defendant-Appellant.

(No. 12404;

Fourth District—July 17, 1974.

*Rehearing denied August 13, 1974.*

1050

John F. McNichols and John L. Swartz, both of the State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (John R. McClory, Assistant State's Attorney, of counsel), for the People.

MR. JUSTICE CRAVEN delivered the opinion of the court:

Defendant was indicted for burglary and subsequently convicted at a jury trial on that charge. The trial court entered judgment on a verdict and sentenced defendant to an indeterminate term of 3 to 9 years. Defendant appeals.

On appeal defendant urges that he was denied a fair trial because the prosecutor commented upon his failure to testify. Secondly, it is contended that the trial court erroneously overruled defendant's objection concerning the admission into evidence of testimony dealing with certain statements he made after his arrest. Next it is argued that guilt was not proven beyond a reasonable doubt.

At trial the defendant admitted that he had entered the Ridgeview Baptist Church as alleged, but asserted that he was not guilty of the burglary by reason of insanity.

Michael Hafner, the arresting officer, testified that he was inside the church on the night of the burglary. He heard a window breaking in the basement of the church sometime around 12:30 A.M. Later he heard someone prowling around the interior of the church. Hafner testified he also heard prying. When defendant entered the auditorium where Hafner was hiding, the officer apprehended him.

The Reverend Gary D. Nelson, minister of the Ridgeview Baptist Church, testified that the police had permission to be inside the church the evening in question; that he had never given Potter permission to be inside the church. He also testified that he was called to the church around 12:30 A.M. because it had been broken into. When he arrived he observed that a window had been broken and a door jimmied.

The defense called four witnesses. Probation officer Joseph Ottino testified that he had known defendant for 15 or 16 years and had first come into contact with him as a juvenile in St. Charles State Training School for Boys. Ottino stated that at that time Potter had been diagnosed as schizophrenic. On cross-examination Ottino stated that he had no education or training in behavorial sciences.

Bernice Potter, defendant's grandmother, testified that defendant's mother had left him when he was 2 years old. She stated that her grandson was a very unpredictable and unreliable individual, and that he had emotional difficulties which first came to the surface in high school. She noted that he was sent to the State Hospital at Kankakee when he was about 16 and diagnosed as schizophrenic. On cross-examination, Mrs. Potter stated that defendant had a temper and that she doesn't always get along with him.

Dr. Michael B. Greenfield, a psychiatrist, testified on behalf of the defendant. He stated that he had examined Potter and diagnosed him as having paranoid psychosis, resulting in an emotionally unstable aggressive person. Greenfield's testimony went into Potter's medical history which noted a disordered home life, poorly adjusted school life, and early delinquency leading to institutionalization and incarceration in the Federal penitentiary.

Greenfield further testified that predicated upon his own experience, defendant was not faking his symptoms and at the time of the crime Potter substantially lacked capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law because of his mental disorder.

Dr. Greenfield testified on cross-examination that Potter had just been getting over an attack of paranoia psychosis when he was examined on March 11, 1973. Two prior examination records were introduced by the State. Greenfield testified that the conclusion of his examinations on

December 21, 1972 was that the defendant was an aggressive psychopath. Greenfield further testified that he could not say with certainty that defendant would have committed an illegal act with a police officer standing next to him, but that a paranoid psychopathic could do such a thing. He elaborated that under that type of impulse a person could be extremely destructive. Moreover the doctor testified that on February 15 or 16, 1973, in reference to another criminal charge, he had testified that defendant was not insane on an earlier date, and that he could appreciate the criminality of his conduct and could conform his conduct to the law.

On redirect Greenfield testified that a person with paranoid psychosis would have interludes during which he would be able to understand the ramifications of his conduct, and periods during which he could not deal with his aggressive paranoid impulses.

Dr. Lazzaro Sanchez testified on behalf of defendant. He testified that he came into contact with defendant at the State Hospital in Kankakee after Potter had been committed. He stated that he concurred in the diagnosis of two other physicians that Potter was a paranoid personality and that there is a difference between a paranoid personality and paranoid psychosis.

On cross-examination, Sanchez testified that there might be improvement with prolonged treatment, but that Potter had not been in the hospital long enough to receive psychotherapy. He further stated that Potter might be aware of the wrongfulness of his act, but that he acted on impulse.

The court, out of the presence of the jury, raised the question of defendant's competency based upon the testimony of Dr. Greenfield. The State noted that competency was previously determined in February 1973 at which time defendant was found competent. The State noted that defendant was found sane by a jury and that defendant appeared to be able to consult with an aid counsel in the present case. Defense counsel noted that Greenfield had been asked by the State to examine defendant and agreed that defendant could cooperate with counsel. Thereafter the court agreed that defendant understood the nature of the proceeding, the charges against him, that he could cooperate with counsel, and found defendant competent.

In rebuttal the State called a total of seven witnesses. The first witness was Sergeant William Ingle. Ingle stated that he was walking by the cell occupied by defendant when defendant motioned him to come over to the cell. Defendant then began to ask Ingle what he was going to be charged with. Defense counsel objected that the officer was about to testify concerning conversation with defendant without first establishing

that defendant had been advised of his rights under *Miranda.* The objection was overruled. The witness went on to state that defendant was told he would be charged with burglary. Defendant's response was, "Don't you have to take something to be charged with burglary?"

Next the State called Officer Joseph E. Miller to testify. Miller was at the station on the morning of March 7, 1973. He testified that Potter made a statement to a woman who had been brought in for a traffic offense. Defendant's counsel again raised an objection as to what the officer heard and what the defendant had said because there was no evidence that defendant had been advised of his rights under *Miranda.* Again the objection was overruled. The officer testified that Potter first asked the woman if she knew what had prompted him to commit the act that he stood accused of, and the woman shook her head no. According to Miller, defendant allegedly replied that society had made him do it.

Officer Doug Miller testified that he had brought defendant into the Danville police station on the morning of the incident in question. He testified that defendant refused to answer any questions, demanded an attorney, and was generally uncooperative but not obstreperous.

Deputy Joseph Charles Tharp testified that on April 18 Potter had become unruly in his cell. He attempted to quiet him and had a conversation with Potter. He was asked if defendant said anything to him. Defense counsel objected on the same grounds as his two prior objections. The objection was overruled. The deputy stated that defendant asserted he had nothing to worry about for he was going to con them like a snake and charm his way out of here like he had done before.

In the State's closing argument, in rebuttal the prosecutor dealt with the issue of insanity and the ability of defendant to formulate the intent necessary for the commission of the offense of burglary. The prosecutor stated that:

> "I submit to you that Larry Potter entered the Ridgeview Baptist Church in the early morning hours of March 7, 1973, with the intent to get something of value, something, either money, or worth money, because he was out of money. * * * It is as simple as that. Battle of the experts? No. No battle. *Only Larry Potter knows the truth—he don't want you to know it, but you know it and the truth damns his case as he would damn society."*

(Emphasis supplied.)

Thereafter the jury returned the verdict of guilty.

Defendant urges that he was denied a fair trial because the aforementioned comment made by the prosecutor contained prejudicial references to the failure of defendant to testify in his own behalf.

■■ It is improper for the prosecutor to comment on the defendant's failure to take the stand. (*Griffin v. California,* 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229; Ill. Rev. Stat. 1971, ch. 38, ¶ 155—1.) It has been consistently held that a prosecutor may not accomplish indirectly what it cannot do directly, that is, any reference which is intended or calculated to direct the attention of the jurors to defendant's failure to take the stand in his own defense is violative of defendant's constitutional right against self-incrimination. *People v. Hopkins,* 52 Ill.2d 1, 284 N.E. 2d 283.

In this case, the prosecutor's comments do not refer to defendant's failure to testify. The prosecutor was commenting on the evidence as it unfolded at trial and addressing the issue of defendant's ability to formulate the specific intent for the commission of the offense of burglary as charged in this case. Defendant had introduced evidence sufficient to raise the issue of his sanity at the time of the offense, thereby rebutting the presumption of sanity. Accordingly the State was attempting to meet its burden of establishing that defendant was sane.

Defendant urges that the objections to the testimony of William Ingle, Joseph E. Miller, and Joseph Charles Tharp, on the basis that the State failed to show the voluntariness of defendant's statements which had been made in custody, were improperly overruled.

■■ *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, is applicable only to situations of custodial interrogation—where the suspect is substantially deprived of his freedom of action in a significant way and subjected to questions initiated by the authorities. (384 U.S. 436, 444.) In *Miranda,* the Supreme Court stated:

> "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. 436, 478.)

The Supreme Court was referring to spontaneous or volunteered statements made by a suspect when the authorities had not focused their attention on the accused for the purpose of soliciting incriminating statements. The scope of our inquiry is whether the statements in question

were the by-product of custodial interrogation. We find that they were not.

■■ The record of this case establishes that when defendant made the statements he was in custody but was not subjected to *interrogation*. His utterances were made without any prodding or inducement by the authorities. The statements in question were clearly voluntarily given and admissible against the defendant without a showing that defendant had been given the admonishments under *Miranda*.

Next, the defendant contends that his guilt was not established beyond a reasonable doubt. Defendant was charged with burglary with the intent to commit a theft. He argues that conviction for the offense of burglary requires the proof of the specific intent to commit another felony upon the unauthorized entry into another's premises. Defendant argues that the proof adduced at trial failed to show that he possessed the intent to commit a theft. Defendant substantiates his contention by asserting that the record establishes that neither the arresting officer nor the pastor of the church found any property that had been moved or removed from the premises in question.

■■ We cannot agree with defendant's contention. We have reviewed the evidence in this case and find that it does support his guilt beyond a reasonable doubt.

The judgment of the circuit court of Vermilion County is affirmed.

*Judgment affirmed.*

SMITH, P. J., and CLYDESDALE, J., concur.