|! KLIEBERT, Chief Judge.
The defendant was charged by bill of information filed on April 14, 1993 with aggravated burglary in violation of LSA-R.S. 14:60. When arraigned on the charge on April 19, 1993, the defendant entered a plea of not guilty. The defendant proceeded to trial on October 25, 1993 and the following day the jury returned with a unanimous verdict of guilty as charged.
On October 28, 1993, the state filed a multiple offender bill of information seeking enhanced sentencing of the defendant as a second felony offender. When arraigned on November 12, 1993, the defendant entered a plea of not guilty. Subsequently, on December 15, 1993, the defendant withdrew his former plea and pled guilty to the multiple bill, and in accordance with the terms of the plea agreement, the trial court sentenced the defendant to sixty years at hard labor without benefit of probation or suspension of sentence.
On appeal, the defendant contends that the trial court should have granted the defendant’s Motion for Mistrial based upon the prosecutor’s reference to the defendant’s failure to testify. For the reasons stated below, we affirm the defendant’s conviction.
In early March of 1993, the defendant went to Colleen Olsen’s residence located in Jefferson, Louisiana. When Ms. Olsen an-sweredjjthe door, the defendant stated that he was looking for his brother’s residence which was located in the neighborhood. Because she didn’t “know numbers,” she asked her neighbor where the address given was located and her neighbor responded that “there’s no such number.” Ms. Olsen asked the defendant if he wished to use her telephone in order to contact his brother and he followed her into her residence. After using the telephone without any success, he left her residence.
On March 14, 1993, the defendant again went to Ms. Olsen’s residence, this time stating that he wanted to give her two tickets to a concert as thanks for her earlier kindness. Ms. Olsen declined his offer and the defendant asked her if she had been in her garage. After responding that she had washed clothes, she shut the door.
Later that evening, Ms. Olsen went to her garage to cheek on a load of clothes which was in the dryer. Upon entering the garage, the defendant lunged at her and grabbed her hands which he then held behind her back. When she began to scream, he placed one hand over her mouth. While he continued to hold her, the defendant removed a piece of rope and a knife from his pocket and placed them on the dryer. Fearing for her life, Ms. Olsen picked up the knife and threw it across the garage; whereupon, the defendant secured her mouth with a bandanna and tied her hands behind her back with the rope. In the process of restraining her, he stated that he could “snap” her neck in a second. Thereafter, the defendant turned to look for his knife, and in an attempt to escape, Ms. Olsen “bolted through the door” which was slightly ajar. As she fled, she “worked the bandanna out with my tongue and my teeth” and upon reaching her fence she screamed. At that moment, the defendant, who was pursuing her, grabbed her and placed his hand over her mouth. He then pulled her back to the garage.
Having heard her scream, Ms. Olsen’s neighbor, Brian Cabzow, looked out his window and observed the defendant dragging Ms. Olsen to the garage. After telling his girlfriend to call the police, he went to sit on his porch armed with his shotgun.
IgWhen the defendant subsequently entered the garage with Ms. Olsen, he locked the garage door. After he retied her hands and placed the bandanna back in her mouth, he fondled her breasts. Next, he pressed his crotch against her hands as they remained tied behind her back.
Subsequently, Officer Toney arrived on the scene followed shortly thereafter by Officer Bruno. When Officer Toney looked inside the garage, he observed the defendant with his arm around the throat of Ms. Olsen as *1024 they crouched down on the floor of the garage. He instructed them to exit the garage and Office Bruno proceeded toward a side door of the garage. When Officer Bruno attempted to open the door which was locked, the defendant told Ms. Olsen to “get behind the shelf.” The defendant then climbed through a window and after running a short distance, he was apprehended by the officers.
The defendant contends that the trial court erred in denying his motion for a mistrial based on the prosecutor’s comments during the state’s rebuttal closing argument which referred to the defendant’s failure to testify.
The defendant did not testify on his own behalf at trial and the defense presented no evidence. During the prosecutor’s rebuttal closing argument, the prosecutor responded to the argument of defense counsel that the encounter occurred with Ms. Olsen’s consent by stating:
That for the defense to sit here and say that this was consent, first of all, did anything—you never heard anything on that witness stand regarding consent, not one thing. Not one thing.
[[Image here]]
Furthermore, nothing from that witness stand. The only thing you heard from— well, from—from that witness stand was the victim’s account, the police’s account, and the neighbor’s account.
After the prosecutor concluded his rebuttal closing argument, defense counsel argued, out of the jury’s presence, that the prosecutor’s remarks commented on the defendant’s failure to 1ftestify and thus constituted grounds for a mistrial;[1] however, the trial court denied the motion for mistrial.
Under LSA-C.Cr.P. art. 770(3), a defendant is entitled to a mistrial if the prosecutor refers to the defendant’s failure to testify:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(3) The failure of the defendant to testify in his own defense:
[[Image here]]
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Even without this statutory prohibition, the United States Supreme Court has held that a prosecutor is not free to comment upon a defendant’s failure to take the stand since such a comment violates the Self-Incrimination Clause of the Fifth Amendment made applicable to the states through the Fourteenth Amendment. See Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Edüd 106 (1965); State v. Fullilove, 389 So.2d 1282 (La.1980).
When the prosecutor makes a direct reference to the defendant’s failure to take the stand, a mistrial should be declared. In the case of such a direct reference, a reviewing court will not attempt to determine the effect that the remark had on the jury. State v. Johnson, 541 So.2d 818 (La.1989); State v. Fullilove, supra.
Where the reference to the defendant’s failure to testify is not direct, the reviewing court will inquire into the remark’s intended effect upon the jury in order to distinguish indirect preference to the defendant’s failure to testify (which are impermissible) from general statements that the prosecution’s case is unrebutted (which are permissible). State v. Johnson, supra.
The Louisiana Supreme Court has held that, “where the prosecutor simply emphasized that the state’s evidence was unre- *1025 butted, and there were witnesses other than the defendant who could have testified on behalf of the defense but did not do so,” the prosecutor’s argument does not constitute an indirect reference to the defendant’s failure to testify. State v. Johnson, 541 So.2d at 822 (emphasis in original). However, where the defendant is the only witness capable of rebutting the state’s evidence, a reference to the state’s evidence as being uneontroverted draws the jury’s attention to the defendant’s failure to testify and therefore requires a mistrial. State v. Johnson, supra.
In the instant case, the state presented the testimony of Ms. Olsen, Mr. Cabzow and Officer Toney. Although Ms. Olsen and the defendant were the only persons present at her doorstep and in her garage, Mr. Cabzow and Officer Toney witnessed portions of the encounter between Ms. Olsen and the defendant. As such, Mr. Cabzow and Officer To-ney could have contradicted Ms. Olsen’s testimony if their impressions of the encounter were markedly different from hers; thus, the defendant was not the only person who could have rebutted Ms. Olsen’s version of the incident. We note that Mr. Cabzow testified that he saw the defendant dragging the victim to the garage, which contradicted the defendant’s testimony regarding her consent. Additionally, Officer Toney testified that he observed the defendant restraining Ms. Olsen in the garage, which also contradicts consent. Under these circumstances the prosecutor’s remarks merely emphasized the strength of the state’s case and did not constitute an indirect reference to the defendant’s failure to testify. See State v. Robinson, 563 So.2d 477 (La.App. 1st Cir.1990), writ denied, 567 So.2d 1122 (La.1990) Thus, the trial court did not err in refusing to grant the mistrial.
IsWe have conducted an error patent review and it is noted that, unlike the amended commitment, the transcript and minute entry fail to show that the trial court gave the defendant credit toward service of his sentence for time spent in actual custody prior to imposition of sentence; however, such an allowance is mandatory. LSA-C.Cr.P. art. 880; State v. Sherman, 532 So.2d 908 (La. App. 5th Cir.1988). Therefore, we amend the sentence to confirm the amended commitment and give the defendant such credit.
For the reasons stated herein, we affirm the defendant’s conviction and amend the defendant’s sentence to reflect credit for time served.

CONVICTION AFFIRMED; SENTENCE AMENDED.

. Defense counsel is not required to interrupt opposing counsel in opening or closing argument in order to preserve his objection for appellate review and thus a motion for mistrial is timely when that motion is made upon conclusion of the opening or closing statement. State v. Gaines, 347 So.2d 1153 (La.1977).