JOURNAL ENTRY and OPINION
{¶ 1} Appellant, Roland Miller ("Miller"), appeals his conviction of felonious assault, kidnapping, aggravated burglary, and theft for holding and stealing money from the victim, Walter Szylwian ("Szylwian"), at knife point.
 {¶ 2} On December 9, 2002, Szylwian, an 89-year-old man, returned to his home after church and noticed Miller, a neighbor who had previously assisted Szylwian with painting his home, sitting outside. Miller asked Szylwian for money and Szylwian gave him $2 because he continued to "bother" him for money. Szylwian went inside his home and, later, Miller was invited into Szylwian's home and drank coffee with Szylwian. Again, Miller began to "bother" Szylwian for money and accused Szylwian that he had more money in his coat pocket. Although Szylwian did, in fact, have money in his left coat pocket, he told Miller that the money was not his and that it belonged to the church.
 {¶ 3} Miller demanded that Szylwian give him the money and when Szylwian refused, Miller grabbed a knife, held it towards Szylwian, and with the knife, pushed Szylwian from the kitchen into the bedroom. Miller, with his free hand, grabbed Szylwian by the chest, pushed him onto the bed, and, while pointing the knife at Szylwian, threatened Szylwian that if he did not give him the money he would kill him. Szylwian began to scream for help, but Miller grabbed a pillow from the bed, put it over Szylwian's face, and used it to suffocate and stifle Szylwian's screams. Szylwian attempted to grab the knife from Miller's hand, but cut his thumb and was unsuccessful. Miller then reached into Szylwian's left coat pocket, causing it to rip, grabbed the money, and ran out of Szylwian's home.
 {¶ 4} Because he does not own a telephone, Syzlwian went over to a neighbor's house to call the police. When the police arrived, they had a hard time comprehending what had occurred because Szylwian, a Polish immigrant, spoke only broken English and he was visibly shaken and scared. One of the police officers who arrived at the scene testified that although they never located the knife, Szylwian's cut hand was wrapped in a napkin, there was blood on one of the pillowcases in the bedroom, and Szylwian's left coat pocket was ripped. The police officers took various photographs of Szylwian's home, his cut hand, the pillowcase, and the coat, all of which were admitted into evidence, and followed up on Szylwian's information that he knew Miller as the one who robbed him. The police officers did not take any fingerprints because Szylwian informed them that he cleaned the kitchen table and washed the coffee cups before they arrived.
 {¶ 5} After the trial court granted Miller's Crim.R. 29 motion for acquittal as to the attempted murder charge (and denied his motion for acquittal as to the remaining counts), the jury returned a verdict finding Miller guilty of felonious assault, kidnapping, aggravated burglary, and theft, all with an elderly specification. Miller was later sentenced to a total of eight years in prison. Miller now appeals.
 I {¶ 6} For his first assignment of error, Miller contends that the trial court erred in denying his Crim.R. 29 motion for acquittal as to all counts. In particular, Miller asserts that because the police officers never found the knife, never dusted for fingerprints, and never checked the blood on the pillowcase to determine if it was Szylwian's blood, there was insufficient evidence with which to proceed. Also, Miller asserts that Szylwian's testimony, because of the language differences and the use of the interpreter, was disjointed and confusing and not sufficient for the state to prove the essential elements of the crimes. Miller's assertions, however, are without merit.
 {¶ 7} Crim.R. 29 provides in pertinent part:
 {¶ 8} "(A) Motion for judgment of acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
 {¶ 9} Upon review of a ruling on Crim.R. 29(A), this court construes the evidence in a light most favorable to the state. An entry denying the motion is proper "if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215,216, 555 N.E.2d 689, citing State v. Bridgeman (1978),55 Ohio St.2d 261, 381 N.E.2d 184, syllabus.
 {¶ 10} R.C. 2903.11, felonious assault, provides as follows:
 {¶ 11} "(A) No person shall knowingly:
 {¶ 12} "(1) Cause serious physical harm to another;
 {¶ 13} "(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code."
 {¶ 14} R.C. 2905.01, kidnapping, provides, in pertinent part:
 {¶ 15} "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 {¶ 16} "* * *
 {¶ 17} "(2) To facilitate the commission of any felony or flight thereafter;
 {¶ 18} "(3) To terrorize, or to inflict serious physical harm on the victim or another;
 {¶ 19} "* * *
 {¶ 20} "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 21} "* * *
 {¶ 22} "(2) Restrain another of his liberty * * *."
 {¶ 23} R.C. 2911.11, aggravated burglary, provides as follows:
 {¶ 24} "(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:
 {¶ 25} "(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
 {¶ 26} "(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."
 {¶ 27} Finally, R.C. 2913.02, theft, provides in pertinent part:
 {¶ 28} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 29} "(1) Without the consent of the owner or person authorized to give consent;
 {¶ 30} "* * *
 {¶ 31} "(4) By threat;
 {¶ 32} "(5) By intimidation."
 {¶ 33} Here, even without the knife, the fingerprints, and the blood matching, the evidence was more than sufficient to prove the essential elements of the crimes beyond a reasonable doubt. First, there was sufficient evidence that Miller feloniously assaulted Szylwian when he pushed him onto the bed, suffocated him with the pillow, and, as the photographs showed, caused a cut to his hand with the knife. Likewise, there was sufficient evidence that Miller kidnapped Szylwian when, while using the knife, Miller pushed Szylwian from the kitchen to the bedroom, and restrained Szylwian's liberty by suffocating him with the pillow and by intimidating him with the knife.
 {¶ 34} There was also sufficient evidence that Miller committed aggravated burglary when he threatened Szylwian with a knife and sufficient evidence that Miller committed theft when he reached into Szylwian's coat pocket, without Szylwian's consent, and stole his money. Regardless of the language differences, the photographs of Szylwian's ripped coat pocket and the cut on his hand are consistent with his testimony. Viewing the evidence in the light most favorable to the state, there was sufficient evidence that the essential elements of the crimes could be proven beyond a reasonable doubt and the trial court did not err in denying Miller's Crim.R. 29(A) motion for acquittal on all counts.
 II {¶ 35} For his second assignment of error, Miller contends that his conviction is against the manifest weight of the evidence. In support of his contention, Miller argues that the state's references to Szylwian's age improperly played to the sympathies of the jurors as to cause them to lose their way in rendering their verdict. However, Miller's argument is without merit.
 {¶ 36} The court, in considering whether a conviction is against the manifest weight of the evidence, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526, ¶ 8, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717; see, also,Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211,72 L.Ed.2d 652. The weight of the evidence and credibility of the witnesses are primarily for the trier of fact. Moore, at ¶ 8, citing State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212. The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore, at ¶ 8, citing Martin.
 {¶ 37} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court in Statev. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison (1985),23 Ohio App.3d 10, 490 N.E.2d 926. These factors, which are not exhaustive, include:
 {¶ 38} "1) Knowledge that even a reviewing court is not required to accept the incredible as true;
 {¶ 39} "2) Whether evidence is uncontradicted;
 {¶ 40} "3) Whether a witness was impeached;
 {¶ 41} "4) Attention to what was not proved;
 {¶ 42} "5) The certainty of the evidence;
 {¶ 43} "6) The reliability of the evidence;
 {¶ 44} "7) The extent to which a witness may have a personal interest to advance or defend their testimony; and
 {¶ 45} "8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Mattison,
23 Ohio App.3d at syllabus.
 {¶ 46} Here, it cannot be said that the jury clearly lost its way in finding Miller guilty of felonious assault, kidnapping, aggravated burglary, and theft when the overwhelming weight of the evidence supports his convictions. Moreover, the state's references to Szylwian's age was not only proper, but necessary to prove that the elderly specification, R.C. 2913.01, meaning that Szylwian was 65 years or older, applied to Miller's offenses. Because the jury did not "clearly los[e] its way" in finding Miller guilty, Miller's second assignment of error is overruled.
 III {¶ 47} Miller's third, fourth, and fifth assignments of error contend that he was denied a fair trial because of prosecutorial misconduct. In particular, Miller argues that the state's references to Szylwian's age was an improper attempt to play to the jury's sympathies, that the state improperly commented on Miller's failure to testify, and that the state improperly commented on Miller's previous record. However, Miller's arguments are without merit.
 {¶ 48} First, as analyzed by this court in addressing Miller's second assignment of error, it was not improper for the state to refer to Szylwian's age. Indeed, it was an essential element in proving the elderly specification applied to Miller's charges. As a result, Miller's third assignment of error is overruled.
 {¶ 49} Second, while it is well-established that the state's comments regarding a defendant's refusal to testify violate the defendant's Fifth Amendment right to remain silent, the state may comment on the substance of defendant's counsel's opening statement. See Griffin v. California (1965), 380 U.S. 609,85 S.Ct. 1229, 14 L.Ed.2d 106. Here, Miller's counsel stated in his opening statement that "[t]he evidence will show * * * that Mr. Miller was over on West 14th Street over at St. Augustine's on this particular day because he volunteered there." However, Miller presented no evidence whatsoever that this was a case of "mistaken identity" and, as a result, the state's comments to the jury during closing argument that they should disregard the opening statement because it is not evidence, was not improper, nor a violation of Miller's Fifth Amendment right to remain silent. Although its application is unnecessary in this case, the doctrine of invited error is worth mentioning. A party has the absolute right to address issues raised by an adverse party provided the party does not trample upon constitutional rights or violate the rules of evidence. Thus, Miller's fourth assignment of error is also overruled.
 {¶ 50} Finally, contrary to Miller's assertion, the state was not commenting on Miller's previous criminal record when the state, in its closing argument, argued that Miller "had done it in the past and knew he could get away with it." Instead, the state was referring to Szylwian's testimony that Miller had previously worked for Szylwian, for which he was paid, and had previously borrowed money from Szylwian for work he promised to, but never did, complete. The state was referring to the fact that Miller had previously preyed on Szylwian for money. Because the state did not refer in any way to Miller's previous criminal record, Miller's fifth assignment of error is overruled.
 {¶ 51} The judgment is affirmed.
Judgment affirmed.
Cooney and Karpinski, JJ., concur.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.