Filed 3/2/22  P. v. Simentel CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>MARTIN ABEL SIMENTEL,<br><br>     Defendant and Appellant. | F079787<br><br>(Kern Super. Ct. No. DF014184A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Jose R. Benavides, Judge.

Jan B. Norman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephanie A. Mitchell and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**INTRODUCTION**

Appellant and defendant Martin Abel Simentel was convicted by a jury of assault with a deadly weapon and two misdemeanor drug charges. On appeal, defendant claims that the judge's comments during voir dire regarding a defendant's right to not testify were prejudicial and infringed on his right to remain silent. We find no violation of defendant's Fifth Amendment rights occurred as a result of the trial court's comments and affirm the judgment of the trial court.

**FACTS**

*Procedural History*

The Kern County District Attorney filed an information on April 5, 2019, charging defendant with the following offenses (count 1) assault with a deadly weapon, a felony (Pen. Code, § 245, subd. (a)(1); (count 2) unlawful interference with a business establishment open to the public, a misdemeanor (Pen. Code, § 602.1, subd. (a); (count 3) misdemeanor possession of methamphetamine, a misdemeanor (Health and Safety Code, § 11377, subd. (a); (count 4) misdemeanor possession of drug paraphernalia, misdemeanor (Health and Safety Code, § 11364); and (count 5) misdemeanor being under the influence of methamphetamine, misdemeanor (Health and Safety Code, § 11550, subd. (a)).

Defendant pleaded no contest to count 5 for being under the influence of methamphetamine at a jury trial held on July 8, 2019. During voir dire, defendant's counsel moved for a mistrial and new venire in response to the trial court's comments on a defendant's right to remain silent. The trial court denied both motions prior to resuming voir dire, and it dismissed count 2 for interference with a business establishment on the motion of the prosecutor at the close of evidence. The jury returned verdicts of guilty on counts 1, 3, and 4.

On August 8, 2019, the trial court sentenced defendant to the upper term of four years in state prison on count 1, concurrent term of one year in jail on count 3, and six

months on counts 4 and 5, with credit for time served. Defendant was ordered to pay restitution fines and fees on each count. On August 13, 2019, defendant filed a timely notice of appeal.

***Trial Testimony***

On March 19, 2019, Irene Alcorta ("Alcorta") was working on the second floor of the administration building at the Delano Regional Medical Center. Alcorta and a coworker went to the women's restroom at approximately 8:00 a.m. where the coworker discovered that a man was in one of the bathroom stalls. Security Officer Richard Navarro ("Navarro") was immediately contacted by Alcorta. Alcorta heard the men's restroom door close while she waited outside the restroom.

Navarro initially found no one in either the women's or men's restrooms. When he returned to the women's restroom, he saw someone's legs under the first stall. The person in the stall initially claimed to be a woman and stated they were transgender. Navarro asked the person to exit the stall with his hands up, and the person, later identified by Navarro as defendant, opened the stall door with his hands in the air. When recalled as a defense witness, Navarro denied that he took a step toward defendant when defendant stepped out of the restroom stall. Navarro acknowledged that his left and right shoulders are possibly about two feet apart.

After opening the stall door, defendant brought his hands down and reached into his right pocket. Navarro was standing approximately three feet away as defendant pulled out a "flip knife" and took an aggressive step toward Navarro. Defendant held the handle of the knife in his palm and used his thumb to pop the blade out. As defendant moved the knife blade toward Navarro's chest, Navarro hit the knife out of defendant's hand. Navarro guided defendant to the ground with assistance from another security officer, Angel Gonzalez ("Gonzalez"), who had recently responded to the restroom.

Gonzalez arrived at the scene when Navarro was instructing defendant to step out of the restroom stall. Gonzalez witnessed defendant do a "lunging motion" toward

3.

Navarro while he was holding the knife blade towards Navarro's chest area. After assisting Navarro in leading defendant to the ground, both security officers escorted defendant downstairs and out of the building.

Moses Pena ("Pena"), a manager with the Environmental Services Department at Delano Regional Medical Center, responded to the security officers' request for assistance. Pena located a knife on the floor with a blade at a 90-degree angle from the handle when he arrived to secure the scene of the incident. The knife was identified as a match to the one wielded by defendant with a black handle and silver blade. Pena grabbed the knife and delivered it to the Public Safety Manager, Tom Evans ("Evans"). Evans provided the knife to an officer with the Delano Police Department.

Delano Police Officer Jose Herrera ("Herrera") responded to the scene of the incident and made contact with Navarro. Herrera searched defendant in the parking lot and located a glass pipe and clear plastic bag, identified as methamphetamine, in defendant's possession. The pipe had a black and white residue, which indicated that it had been used to smoke methamphetamine.

Herrera took photographs of the knife with the blade open before closing it as he placed it into evidence. During his testimony at trial, Herrera demonstrated that the knife can only be opened or closed by pressing down on a small mechanism on the side of the knife. After completing his investigation, Herrera placed defendant under arrest.

## DISCUSSION

Defendant contends the trial court made improper comments during voir dire that violated his Fifth Amendment right to remain silent. Defendant argues that the trial court communicated a message to the jury that it believed defendant should testify. Defendant requests that this court reverse his convictions because the alleged error prejudicially affected the jury's deliberations on guilt.

## I. Procedural Background

On the first day of defendant's jury trial, the trial court began voir dire of prospective jurors by asking questions of jurors and discussing the presumption of innocence. Next, the trial court proceeded with a discussion of a defendant's right not to testify as follows:

> "By a show of hands, how many of you would like for Mr. Simentel to take the stand, and give us his version of events? Oh, I raised my hand. I think it is pretty much human nature that if someone accused you of a crime, I would think that most people would want to hear from that individual. Okay. So not all of you raised your hands, but I'll raise my hand to get it started because I honestly believe that it is a human nature kind of thing. Let me see."

In response to the trial court's statements, two prospective jurors raised their hands, but both jurors affirmed their understanding that defendant had a right not to testify. The trial court then admonished the entire panel to not discuss "or even consider the fact if Mr. Simentel chooses not to testify."

One prospective juror explained that he would want to hear from the defendant to understand his side. After redirecting the prospective juror back to the issue of a defendant's right not to testify, the trial court explained that it raised its own hand "because I think most people would want to hear from someone being accused in a criminal trial. And I think some of you in the panel raised your hands in agreement with me." The trial court then emphasized to the prospective juror that the only person in the courtroom that had an obligation to prove anything is the prosecutor, and defendant "has no obligation to prove anything at all."

After the prospective juror affirmed an understanding of a defendant's right to not testify, the trial court asked all other prospective jurors if they could completely set aside any desire to hear from defendant if he chose not to testify. No prospective jurors indicated a problem with not considering any decision of the defendant to not testify, and the trial court moved on to a separate discussion on the prosecutor's burden of proof.

5.

During argument on the defendant's motion for a mistrial, the trial court explained that it raised its hand, "in an attempt to start the discussion with the jurors because no one raised their hand." He further elaborated that, "It was solely for purposes of generating a discussion, so that I could then inquire further as to their feelings, who feels [] so strongly about that."

**A.** *Analysis*

"The Fifth Amendment to the United States Constitution provides that '[n]o person … shall be compelled in any criminal case to be a witness against himself,' and the [United States Supreme C]ourt has interpreted this provision to 'forbid[ ] either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.' [Citation.]" (*People v. Thompson* (2016) 1 Cal.5th 1043, 1117, quoting *Griffin v. California* (1965) 380 U.S. 609, 615.)

In the present case, the trial court's comments did not invite the prospective jurors to infer guilt from any refusal of defendant to testify at trial. The trial court's comments merely acknowledge that people may wish to consider a defendant's decision not to testify when determining guilt. Although the trial court raised its own hand to encourage others who may have a difficult time setting aside the desire to consider a defendant's silence, the trial court explicitly and repeatedly admonished the prospective jurors that they were not allowed to consider any decision to remain silent by the defendant. The trial court was actually encouraging prospective jurors to fight against any such impulse and attempting to discover any jurors that were unable to disregard this impulse.

Defendant's contention that the trial court was expressing its personal preference to have a defendant testify is misplaced, and such an argument ignores the larger context of the trial court's discussion and repeated admonitions to disregard any lack of testimony from the defendant. The trial court's comments contained no references, express or implied, to an actual decision by the defendant to remain silent. Viewed in

6.

context, the trial court's remarks can be seen as part of a general discussion where prospective jurors understood and acknowledged the defendant's right not to testify.

In addition, defendant's attempts to compare the repetitive and inappropriate remarks by the trial courts in the cases of *People v. Sturm* (2006) 37 Cal.4th 1218 and *People v. Abel* (2012) 53 Cal.4th 891 are without merit. Those cases involved patterns of behavior and remarks made throughout the course of the trial that constituted judicial misconduct. The conduct of the trial court in the present case does not reflect any behavior that was disparaging of a defendant's right to remain silent such that it would amount to judicial misconduct. Therefore, we reject any claims of judicial misconduct or *Griffin* error.

Recognizing that the trial court's rhetorical comments were unusual, we find no prejudice. When faced with a prosecutor's utterance of comments of this type (i.e., short, isolated statements not calling for improper consideration of a defendant's silence), appellate courts have generally found such comments harmless. " ' "[I]ndirect, brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error." ' [Citation.]" (*People v. Boyette*, (2002) 29 Cal.4th 381, 455–456; see *People v. Turner* (2004) 34 Cal.4th 406, 419–420.)

Even appreciating the greater weight that jurors may give statements from the trial judge when compared to a prosecutor, we find that the court's comments were harmless in these circumstances. The trial court's comments consisted of one brief query and did not directly suggest the jury should draw an inference of guilt from defendant's decision not to testify. In fact, while the court's method of informing the jury of the defendant's Fifth Amendment rights was unconventional, the jury was clearly instructed that, "[a] defendant has an absolute constitutional right not to testify…. Do not consider for any reason at all the fact that the defendant did not testify." We assume the jury followed this instruction. (*People v. Seumanu*, (2015) 61 Cal.4th 1293, 1336.)

Considering these circumstances, we conclude that any purported error flowing from the trial court's comments was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.) Therefore, the judgment of the trial court is affirmed.

**DISPOSITION**

The judgment is affirmed.


POOCHIGIAN, ACTING P. J.

WE CONCUR:


SMITH, J.


SNAUFFER, J.

8.