Filed 8/29/22  P. v. Ybarra CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C094583 |
| Plaintiff and Respondent, | (Super. Ct. No. 17FE007784) |
| v. | |
| ARMANDO YBARRA, JR., | |
| Defendant and Appellant. | |

A jury found defendant Armando Ybarra guilty of gross vehicular manslaughter, driving under the influence of alcohol, and driving with a blood-alcohol level of 0.08 percent or greater.  The trial court sentenced him to 15 years to life in state prison.  Defendant appeals, arguing the prosecutor improperly commented on his decision to remain silent at trial.  We find no prosecutorial misconduct and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant drove his Subaru over a raised center median and into the oncoming traffic lane. He collided head-on with a Hyundai. Both defendant and the driver of the Hyundai, Andre Arnold, were taken to a nearby hospital.

A California Highway Patrol officer responded to the scene of the collision. Neither of the drivers were present when he arrived. The officer smelled alcohol and found an open container of an alcoholic beverage that was still cold to the touch in the Subaru. To continue his investigation, the officer went to the hospital to interview the drivers. At the time, he did not know who had driven which car. Based on the information provided by the hospital, the officer located defendant in the emergency room. Defendant told the officer that he was the driver of the Subaru. The officer asked defendant how his car had crossed the median, and defendant responded that he did not know what happened and that he just lost control of the car. Defendant also denied he had been drinking alcohol either before or after the collision. The officer measured defendant's blood-alcohol level at 0.199 percent and placed him under arrest. Andre Arnold died approximately one month later from injuries sustained during the collision.

A jury found defendant guilty of gross vehicular manslaughter, driving under the influence of an alcoholic beverage, and driving with a blood-alcohol level of 0.08 percent or greater. In a bifurcated proceeding, the trial court found true three prior conviction allegations. Defendant additionally pled no contest to four counts and admitted two prior convictions. The trial court sentenced defendant to an aggregate term of 15 years to life. Defendant timely appealed.

DISCUSSION

In his rebuttal closing argument, as discussed more fully below, the prosecutor commented that defendant was the only person "who knows" how the fatal collision occurred but did not explain "when he had the opportunity." Defendant contends this

2

comment violated his Fifth Amendment rights and constituted error under *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106]. We disagree.

I

*Additional Background*

In his rebuttal closing argument, the prosecutor commented: "[I]f the defendant was not intoxicated/impaired to the point where he did not know what he was doing or able to control his car, how did this accident--this collision happen?" He then addressed the officer's testimony: "[T]hat's what happened at the hospital when Officer Browning spoke to Defendant Ybarra. . . . [¶] . . . [¶] . . . He did not want to tell the officer that he had been drinking. Why? Because there was no other reasonable explanation for why and how this collision occurred. [¶] 'How did you lose control?' [¶] 'I don't know.' "

After discussing defendant's behavior following the collision and blood-alcohol level, the prosecutor continued: "And I go back to, if he was not intoxicated, why did this happen? How did it happen? [Defense counsel] suggests to you that the People don't know, no one knows. You know who knows? Defendant Ybarra knows. He was driving the car. [¶] . . . [¶] . . . And when he had the opportunity, if it was something other than the fact that he didn't know because he was so intoxicated, how do you drive a car, go over that median that you saw, slam into another car, and say, 'I don't know what happened?' "

Following a brief discussion on negligence, the prosecutor argued: "Let's just say you're going the speed limit, 65 miles an hour, and the car comes over the median at you. Would you not expect that there's a reasonable explanation for that, and would you not expect that someone would be able to tell you why that collision occurred? [¶] Someone knows, and someone was asked. The inquiry was made, and the answer was, 'I don't know. I don't know. I just lost control.' "

After argument, defense counsel moved for a mistrial on the ground that the prosecutor's comments violated defendant's right to remain silent. The trial court denied

3

the motion, finding the comments were "in reference to the questioning that was conducted at the hospital and . . . [defendant's] alleged lack of candor with the peace officer."

## II

### *Griffin Error*

The Fifth Amendment prohibits a prosecutor from directly or indirectly commenting on the defendant's failure to testify in his or her defense. (*Griffin v. California*, *supra*, 380 U.S. at p. 615 [14 L.Ed.2d at p. 107]; *People v. Medina* (1995) 11 Cal.4th 694, 755.) The *Griffin* rule, however, "does not extend to comments on the state of evidence, or on the failure of the defense to introduce material evidence or to call logical witnesses." (*Ibid.*) The prosecutor has the right to "fully state his views as to what the evidence shows and to urge whatever conclusions he deems proper." (*People v. Lewis* (1990) 50 Cal.3d 262, 283.) The *Griffin* rule also does not require the trier of fact to be "immunized against any dictate of plain reason." (*People v. Beghtel* (1966) 239 Cal.App.2d 692, 695-696.)

We evaluate claims of *Griffin* error by inquiring whether there is "a reasonable likelihood that any of the [prosecutor's] comments could have been understood, within its context, to refer to defendant's failure to testify." (*People v. Clair* (1992) 2 Cal.4th 629, 663.) When the comments were made before a jury, "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.)

Defendant contends that the prosecutor, by directly addressing the jurors, "You know who knows? Defendant Ybarra knows" and emphasizing defendant's failure to explain the collision "when he had the opportunity," carefully designed a line of argument to make a reasonable juror understand defendant could have testified at trial but chose not to. Specifically, defendant argues the prosecutor never clarified to the jurors

4

that the "opportunity" referred to the opportunity to tell the officer what happened. Not so.

As the trial court correctly observed, the prosecutor's comments addressed defendant's "alleged lack of candor with the peace officer," not defendant's failure to testify at trial. The prosecutor explicitly stated he was commenting on "what happened at the hospital when Officer Browning spoke to Defendant Ybarra" when he began his line of argument. He suggested the only reasonable explanation for the collision was that defendant was intoxicated, but defendant could not admit such to the officer. He then argued defendant would have been able to explain what had happened in the collision to the officer instead of answering, "I don't know what happened" "when he had the opportunity" if he had not been intoxicated. Contrary to defendant's contention, the "opportunity" here clearly referenced the opportunity to explain the collision to the officer. Finally, the prosecutor concluded his line of argument by once again referring to defendant's statement to the officer: "Someone knows, and someone was asked. The inquiry was made, and the answer was, 'I don't know. I don't know. I just lost control.' " The prosecutor never once referenced defendant's silence at trial during the complained-of remarks. Rather, he repeatedly referred to defendant's statement to the officer at the hospital in order to persuade the jurors that defendant was intoxicated when the collision happened. We are therefore satisfied that the prosecutor's comments consisted entirely of his view of, and the inferences he urged the jurors to draw from, the officer's testimony. (See *People v. Beghtel*, *supra*, 239 Cal.App.2d at pp. 694-695 [finding the prosecutor's comment "where [the defendant] is afforded the opportunity to explain, and he doesn't, even though it is not in the nature of an accusatory statement because obviously the officers don't know of the commission of the robbery" "consisted almost entirely of a summary of the direct evidence" and did not constitute a *Griffin* error].) A reasonable juror would have construed the prosecutor's comments as merely reflecting his view of the state of the officer's testimony.

## DISPOSITION

The judgment is affirmed.

> /s/
> Robie, Acting P. J.

We concur:

/s/
Mauro, J.

/s/
Krause, J.