Filed 10/11/22 P. v. Brown CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE, | C094436 |
| Plaintiff and Respondent, | (Super. Ct. No. 20FE004828) |
| v. | |
| MICHAEL KENNETH BROWN, | |
| Defendant and Appellant. | |

Defendant Michael Kenneth Brown stabbed two victims and argued at trial that he had done so in self-defense. A jury found defendant guilty of one count of assault with a deadly weapon as to one victim, but not guilty of a second count as to the other victim. On appeal, defendant argues the prosecutor committed *Griffin*[1] error during closing arguments when she argued defendant lacked evidence to support his self-defense theory. Defendant also asserts the trial court imposed a main jail booking fee and main jail

---

[1] *Griffin v. California* (1965) 380 U.S. 609.

classification fee at sentencing that now must be stricken because of legislative changes. We will strike the fees and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant stabbed the two victims, B.D. and J.H., after a dispute about belongings defendant had kept in a storage unit. The prosecution charged defendant with two counts of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)),[2] one for his assault on J.H. (count one), and another for his assault on B.D. (count two). The prosecution also alleged defendant personally inflicted great bodily injury as to both counts. (§ 12022.7, subd. (a).)

At trial, both victims testified for the prosecution, along with others who had been nearby at the time of the crime and deputy sheriffs who had investigated the crime scene. The crime was captured on surveillance video, which was entered into evidence and reviewed by multiple witnesses throughout the trial.

Defendant and an unidentified associate were at the doorway of a house yelling at B.D. The two tried to enter the house, B.D. pushed defendant back, and B.D. fell to the ground. B.D. stood up, realized he had been injured, and retreated into the house, where he discovered his face and hand had been cut.

B.D. stated he had not made any threats to defendant or any of his associates. He did not try to punch defendant before he was stabbed. B.D. required 300 stitches to close his wound and suffered nerve damage as a result of his injuries.

After B.D. fled into the house, J.H. ran out and started punching defendant. Defendant stabbed J.H., who then retreated and lay down outside. Defendant did not try to punch J.H., tell J.H. to stop, or try to disengage and run away from J.H. before

_____

[2] Undesignated statutory references are to the Penal Code.

2

stabbing him. J.H. needed surgery to repair a cut on his colon, was on a breathing tube because of his injuries, and received a cut on his arm.

Defendant did not testify as part of his case-in-chief.

In her closing argument, the prosecutor focused on the issue of self-defense. The prosecutor discussed the elements of self-defense, saying defendant "must believe he's in imminent danger of bodily injury to himself, and that belief must have been reasonable, and his actions must have been based on that belief. [¶] So he had to have acted because he believed that. [¶] So what do we know? [¶] We know first off, that first element, he believed he was in imminent danger and it had to be reasonable, so it's almost two parts: [¶] Did he believe he was [in] imminent danger of bodily injury? [¶] We heard absolutely no testimony that would tell us that he did believe that he was in imminent danger. [¶] There's just nothing that came out during this trial that would lead you to believe that, and that is what he believes. [¶] Was he actually scared he was gonna suffer bodily injury, that that is [what] was about to happen? We heard nothing."

The prosecutor proceeded to discuss the surveillance video footage, pointing out that nothing in the footage suggested that B.D. "just suddenly grabbed a weapon or anything." She pointed out that B.D.'s testimony corroborated the version of events depicted in the video, noting that "[d]efendant's friend" was the aggressor in the conflict, and that "the moment that happened, [defendant] had his knife out ready to go and started slashing at [B.D.]" In the video, defendant was "ready to fight the moment his friend throws the first punch." Summarizing the self-defense elements as to defendant's assault on B.D., the prosecutor repeated, "Again, absolutely no evidence to tell us that [defendant] believed that he needed to use . . . immediate force to defend himself. We heard no testimony that [defendant] had that belief."

The prosecutor also referred to the prosecution witnesses, saying: "The victims didn't want to have to be injured, have to go to the hospital, have to undergo numerous operations, have permanent damage, and they sure didn't want to come here over a year

3

later and have to relive this experience. [¶] You saw that. Every witness you heard from, either -- well, every witness you heard from didn't want to testify in general, was forced to be here because they were under subpoena, and for some of them . . . it was upsetting for them to have to talk about and to have to relive this night over again. So they didn't want to be here. [¶] But, unfortunately, they had to be, because [defendant] showed up, he was angry, he was armed, and he was ready for a fight that night."

During a break, and outside the presence of the jury, defense counsel told the court that although he did not think an objection during the prosecutor's closing statement was warranted, he wanted to note that her statements that the jury "did not hear any testimony that [defendant] did X, Y or Z -- or felt X, Y or Z," seemed "precariously close to a *Griffin* error" because she "was implying that [defendant] did not testify and was making reference to his exercising his right to remain silent and not testif[y]." The court stated that the prosecution "did not go over the line, but [she was] very dangerously close to the line of *Griffin* error." The court agreed to reread CALCRIM No. 355 before the prosecution concluded its argument, and did so after the jury returned to the courtroom, saying: "A Defendant has an absolute constitutional right not to testify. He may rely on the state of the evidence and argue that the People have failed to prove the charges beyond a reasonable doubt. [¶] Do not consider for any reason at all the fact that the Defendant did not testify. [¶] Do not discuss that fact during your deliberations or let it influence your decision in any way." In his closing argument, defense counsel further emphasized defendant's right not to testify.

The jury found defendant guilty on count two, for the assault on B.D., but not guilty on count one, for the assault on J.H. The jury also found true the great bodily injury allegation as to count two. The court sentenced defendant to a six-year term and imposed, among other fines and fees, a main jail booking fee of $453.62 and a main jail classification fee of $90.65.

4

DISCUSSION

I

*Griffin Error*

Defendant argues that the prosecutor's comments in closing arguments about the "lack of testimony" on defendant's state of mind implied "only a personal response by [defendant] on his belief about imminent danger and the need for immediate force could support a claim for self-defense." Thus, defendant argues the prosecutor used defendant's failure to testify "as evidence that [defendant] did not act in self-defense at that moment" and ran afoul of the requirements in *Griffin*. The People argue defendant forfeited this issue because defense counsel did not object, but rather "merely wanted to make a record that the prosecutor was 'precariously close to a *Griffin* error.' " Assuming defense counsel's statements were sufficient to preserve the issue for review, we conclude there was no error.

"In *Griffin v. California*[, *supra*,] 380 U.S. 609, the United States Supreme Court held that the prosecution may not comment upon a defendant's failure to testify in his or her own behalf. Its holding does not, however, extend to bar prosecution comments based upon the state of the evidence or upon the failure of the defense to introduce material evidence or to call anticipated witnesses. [Citations.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1339.) "[A] prosecutor may commit *Griffin* error if he or she argues to the jury that certain testimony or evidence is uncontradicted, if such contradiction or denial could be provided *only* by the defendant, who therefore would be required to take the witness stand. [Citations.]" (*Ibid.*) "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*Id.* at p. 1340.) "*Griffin*['s] . . . protection of the right to remain silent is a 'shield,' not a 'sword' that can

5

be used to 'cut off the prosecution's "fair response" to the evidence or argument of the defendant.' " (*People v. Lewis* (2004) 117 Cal.App.4th 246, 257.)

Here, the prosecutor referred to the lack of evidence and testimony to prove defendant's state of mind in support of his theory that he stabbed B.D. in self-defense. While defendant's testimony could have been one way to establish his state of mind, other evidence in the record provided circumstantial evidence of his state of mind at the time of offense. (*People v. De Leon* (1992) 10 Cal.App.4th 815, 824.) For example, after her comments about the lack of evidence to show defendant believed he was in imminent danger, the prosecutor spoke about defendant's actions in the surveillance video and victim testimony about interactions with defendant shortly before the stabbings. Both of these were circumstantial evidence of defendant's lack of a belief that he was in imminent danger. The video suggested defendant was not at risk before the stabbing because, consistent with the prosecutor's argument, "there's nothing that we see that would lead you to think that somebody just suddenly grabbed a weapon or anything." The testimony corroborated this version of events; the victims "all testified, 'I didn't have a weapon, I wasn't doing anything.' " Thus, when the prosecutor argued that no evidence or testimony supported defendant's theory, it was a permissible comment about how the existing video and testimony did not support defendant's self-defense claim, rather than an improper comment on defendant's failure to testify.

We are unpersuaded by defendant's citation to *People v. Medina* (1974) 41 Cal.App.3d 438, which found *Griffin* error based on a prosecutor's statement that the jury should "believe the testimony of the three accomplice witnesses because the defendants, who were the only ones who could have refuted it, did not take the stand and subject themselves to cross-examination and to prosecution for perjury." (*Medina*, at p. 457.) As defendant acknowledges, the prosecutor here did not mention defendant's failure to refute the other witnesses' testimony. Nor, as discussed above, did her statements otherwise imply that only defendant's testimony could rebut the statements by

6

the other witnesses. Rather, the prosecutor merely emphasized the damage defendant's actions had caused and contextualized the victims' sometimes emotional testimony for the jury. These comments did not amount to prosecutorial misconduct.

II

*Assembly Bill No. 1869*

Defendant asserts that, following the enactment of Assembly Bill No. 1869 (2019-2020 Reg. Sess.), the main jail booking fee and the main jail classification fee are no longer enforceable, are uncollectable, and must be stricken. The People agree, as do we. Among other things, Assembly Bill No. 1869 repealed Government Code section 29550.2, which authorized these fees. (Stats. 2020, ch. 92, § 25, eff. July 1, 2021.) It also enacted Government Code section 6111, which provides: "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).) As such, the main jail booking fee and main jail classification fee, which were imposed by the trial court at the June 24, 2021 sentencing hearing, are unenforceable, uncollectible, and shall be vacated.

## DISPOSITION

The main jail booking fee and main jail classification fee are vacated.  The trial court is directed to forward a revised abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

      /s/       
BOULWARE EURIE, J.

We concur:

     /s/      
ROBIE, Acting P. J.

     /s/      
HULL, J.